# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| ALFONSO CIOFFIETA, et al. | § § | |
| *Plaintiffs*, | § § | Case No. 2:13-CV-00103-JRG-RSP |
| v. | § § | |
| GOOGLE, INC., | § § | |
| *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs currently allege that Google's Chrome web browser infringes seven claims—claims 43 and 70 of U.S. Patent No. RE 43,500, claims 5 and 67 of U.S. Patent No. RE 43,528, and claims 30, 38, and 49 of U.S. Patent No. RE 43,529, all of which relate to computer program products and methods for managing malware downloaded from a network. *See* Dkt. 180. Google moves to exclude the opinions of Plaintiffs' damages expert, Mr. Walter Bratic, under Federal Rule of Evidence 702 and *Daubert*. Dkt. 151. Google contends that Bratic's opinions are unreliable for three reasons: Bratic (1) multiplies a royalty rate by an unrelated royalty base; (2) relies on un-accused ad revenue in calculating the royalty rate; and (3) improperly apportions damages to the allegedly-infringing feature of Google Chrome. Google's motion is **GRANTED-IN-PART** to the limited extent explained below but otherwise **DENIED**.

## I. DISCUSSION

When evaluating a party's challenge to an opponent's expert witness, the Court assumes the role of gatekeeper to ensure the reliability and relevance of the expert's testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). Rule 702 guides the inquiry, providing that a qualified expert may testify as

1

long as his opinion will aid the fact finder and is reliable, i.e., the opinion must stand on sufficient data, reliable methods, and the facts of the case. *See Daubert*, 509 U.S. at 590; Fed. R. Evid. 702(a)-(d); *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003) ("In 2000, Rule 702 was amended in response to *Daubert* and cases applying it.").

Section 284 of the Patent Act provides that damages for patent infringement must be "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. "The statute contemplates that when a patentee is unable to prove entitlement to lost profits or an established royalty rate, it is entitled to 'reasonable royalty' damages based upon a hypothetical negotiation between the patentee and the infringer when the infringement began." *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995). While the analysis "necessarily involves an element of approximation and uncertainty, a trier of fact must have some factual basis for a determination of a reasonable royalty." *Id.*

The parties in this case have confined their damages dispute to a reasonable royalty that the parties would have hypothetically negotiated just before infringement began. Dkt. 151 at 3. Accordingly, both parties must necessarily accept that approximating a reasonable royalty involves an element of uncertainty. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). "[E]stimating a reasonable royalty is not an exact science." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). With this backdrop in mind, the Court considers Google's three bases for excluding Bratic's damages opinion.

### A. Bratic's Royalty Rate and Base

All royalties have at least two variables: the royalty base and the royalty rate. *See, e.g.*, *Lucent Techs.*, 580 F.3d at 1339. Bratic calculates a royalty rate by estimating Google's

incremental revenue for each new Chrome user per year and then multiplies the incremental revenue by both an estimated profit margin and an apportionment figure derived from the estimated value of the patented invention. *See* Dkt. 151-1 ¶¶ 127-136. To determine the royalty base, Bratic relies on Google's estimate of the number of users that access Chrome in a 7-day period. *Id.* ¶ 133. Bratic then multiplies the rate by the base to determine reasonable royalty damages. *Id.* ¶ 142.

Google argues that Bratic's calculation is unreliable because Bratic's royalty rate relies on an estimate of incremental revenue derived from new Chrome users, whereas his royalty base relies on the total number of Chrome users, which may be new or existing users. Dkt. 151 at 6-7. Google characterizes Bratic's calculation as multiplying "apples with oranges." Dkt. 151 at 7.

The Court sees it differently. It is not at all clear what difference there is, if any, between incremental revenue derived from a new Chrome user and incremental revenue derived from an existing Chrome user. As Plaintiffs explain, Bratic only accounts for Chrome users that Google itself considers frequent users. *See* Dkt. 151-1 ¶¶ 127-141. Google repeats the conclusion that new and existing user data are "unrelated" and insists that it is not Google's burden to demonstrate that Bratic's reasoning is unsound. *See* Dkt. 178 at 2. But Bratic's reasoning appears sound, and absent a reasoned explanation suggesting otherwise, the Court will not second-guess it. Finally, Google's arguments regarding the supposedly-inflated amount of Chrome users are not persuasive. To the extent Bratic's "credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility." *See Summit 6*, 802 F.3d at 1299.

### B. Reliance on Advertisement Revenue

Bratic's incremental revenue per user, i.e., the revenue value Bratic uses to determine the royalty rate, is based on a model estimating Google's revenue from a new user of Chrome. The

revenue is not derived from sales of Chrome itself because Chrome is offered to users for free. *See* Dkt. 170 at 10-11. Rather, revenue attributable to Chrome is generated when a user clicks on an ad that appears alongside Google search results within the Chrome browser. Dkt. 151-4 at 50:11-51:19.

Google argues that Bratic's reliance on ad revenue is improper because ads appearing in search results are "unpatented components" which can only factor into damages if the ads and the patented features are together "considered to be components of a single assembly . . . of a complete machine, or they together constitute[ ] a functional unit." *See* Dkt. 151 at 8 (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995)).

The Court does not agree. Google downplays the relationship between ad revenue and the Chrome browser. Bratic's incremental revenue assumption, based on one of Google's own models for estimating Chrome's incremental value over other browsers, *see* Dkt. 151-4 at 163:16-25, properly takes into account the fact that Google generates more ad revenue when a user clicks an ad in Chrome versus when a user clicks an ad in another browser such as Internet Explorer or Firefox, *see* Dkt. 170-3 ¶ 41. Bratic does not improperly include revenue from an unpatented product into his calculation. Rather, Bratic is estimating the revenue—albeit not traditional sales revenue—derived from the Chrome browser. To the extent Bratic is overestimating, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Google also contends that Bratic's use of incremental Chrome revenue violates the entire market value rule because Bratic does not show that the patented feature "drives the demand for

4

[the] entire multi-component product." Dkt. 151 at 10 (quoting *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 62 (Fed. Cir. 2012)).

The Court is not persuaded. First, Bratic's opinions does not run afoul of the entire market value rule. Bratic relies on another expert's opinion regarding the proportional value of the allegedly infringing feature of Google Chrome. This opinion is based largely on Google's own marketing brochure illustrating four key attributes of Chrome's design: stability, speed, simplicity, and security. Dkt. 151-1 at 41-43. Most importantly, the brochure explains that "malware and phishing are huge problems for users, affected trust and confidence in the web." *Id.* at 44. "Malware is very financially driven. It's all about stealing passwords and moving money around." *Id.* In designing Chrome, the brochure acknowledges that Google "began with the assumption that [the user's browser] would get compromised. [The user] will eventually encounter malware." *Id.* The solution to this problem, according to Google, is "sandboxing," which prevents a process executing on a web browser from affected local files or other web browser processes executing in different tabs. *Id.* at 45. Sandboxing is the very feature that allegedly falls within the scope of the asserted claims.

As far as the Court can tell, Google's argument is really a prejudice argument based on Rule 403, as opposed to a reliability argument based on Rule 702 or the entire market value rule. *See* Dkt. 151 at 10. Google stresses that it would be prejudicial to allow Bratic to show the jury Chrome's total revenue or profit because the allegedly infringing feature only accounts for a portion of that profit. *See id.* Indeed, Google's argument evidently stems from Bratic's repeated references to Google's *total* revenue and profit associated with the Chrome browser. *Id.* at 11.

The Court agrees with Google on this limited point. Plaintiffs are precluded from presenting testimony or argument regarding Google's total revenue or profit figures based on the

entire Chrome browser. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) ("The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."); *see also* Fed. R. Evid. 403.

### C. Economic Apportionment

To determine the proportional value of the allegedly-infringing feature of Google Chrome, Bratic relies on Plaintiffs' technical expert, who opines that the relevant feature accounts for 18.33% of Chrome's total "technical value." *See* Dkt. 151 at 12 (quoting expert report). Google argues that Plaintiffs' approach relies on the allegedly-infringing feature's technical contribution to Chrome, as opposed to its economic contribution. Dkt. 151 at 12-13.

In the context of Bratic's opinion, there is little difference between technical and economic contribution. Plaintiffs' technical expert explains the four key attributes of Chrome, which are based largely on Google's own marketing documents. *See* Dkt. 151-1 at 41-43. These attributes may be "technical" attributes as Google insists, but if they were not also "economic" attributes, Google would not have included them on its principal marketing brochure. *See id.* Bratic therefore does not pluck his apportionment value out of thin air as the expert did in cases such as *LaserDynamics*. *See* 694 F.3d at 69.

## II. CONCLUSION

Google's motion (Dkt. 151) to exclude is **GRANTED-IN-PART** to the limited extent that Plaintiffs are precluded from presenting testimony or argument regarding Google Chrome's total profit or revenue figures. Google's motion is otherwise **DENIED**.

**SIGNED this 9th day of January, 2017.**

                                                              ROY S. PAYNE
                                                              UNITED STATES MAGISTRATE JUDGE