UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

ALFONSO CIOFFI, an individual,
MEGAN ROZMAN, an individual,
MELANIE ROZMAN, an individual, and
MORGAN ROZMAN, an individual,

    Plaintiffs,

vs.

GOOGLE, INC.,

    Defendant.

Case No. 2:13-cv-103 (JRG/RSP)

## PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE, INC.'S MOTION FOR POST-TRIAL RELIEF ON INVALIDITY UNDER 35 U.S.C. §§ 102, 103 AND 251

## TABLE OF CONTENTS

**Title**                                                                                                    **Page**

I.   LEGAL STANDARD                                                                                            1
     A.  Judgment as a Matter of Law and Motion for New Trial                                                  1
     B.  The Reissue Statute, 35 U.S.C. § 251 – Recapture and The Original Patent                              1
         Rule ("OPR")
         1.  The OPR Under 35 U.S.C. § 251                                                                     2
         2.  The Rule Against Recapture, 35 U.S.C. § 251                                                       2
     C.  Invalidity Under 35 U.S.C. §§ 102, 103 (Anticipation and Obviousness)                                 3

II.  ARGUMENT                                                                                                  3
     A.  Google's Motion For New Trial Should Be Denied                                                        3
     B.  The Court Should Confirm The Jury's Verdict That Google Failed to Prove                               4
         Violation of the Opr
         1.  Google Failed to Show that the Specification Does Not Disclose a "First                           5
             Web Browser Process" in Violation of the OPR
         2.  Google Failed to Prove the Specification Does Not Properly Disclose                               10
             Use of a "Single "Processor" in Violation of the OPR
         3.  Google Waived and Failed to Prove the Specification Does Not                                      12
             Properly Disclose a "First Web Browser Process Passing To Or
             Exchanging Website Data With A Second Web Browser Process" in
             Violation of the OPR
         4.  Google Waived and Failed to Prove the Specification Does Not                                      13
             Properly Disclose a "First Web Browser Process Initializing A Second
             Web Browser Process" in Violation of the OPR
     C.  The Court Should Confirm The Jury's Verdict That Google Failed To Prove                               14
         Recapture
         1.  Claim 67 and Claim 43 are Directed Toward Overlooked Aspects of the                              15
             Original '247 Patent
             a)  Google is Wrong that "Web Browser Processes" Were Originally                                 15
                 "Claimed"
             b)  The Patent Discloses Two "Web Browser Processes"                                             17
             c)  The Reissue Claims Are Patentably Distinct                                                   17
         2.  Google Failed to Establish Recapture Because Claims 43 and 67 Were                               19
             Materially Narrowed To Avoid Substantial Recapture of the
             Surrendered Subject Matter (Step Three of the Recapture Test)
             a)  The Patent Office Raises Corthell Against the '247 Patent and in                             19
                 Response the Inventors Amended their Isolated/Non-Isolated Claims
                 to Add a Second Processor
             b)  Cioffi and Rozman Pursue Reissue Claims                                                      20
             c)  Claiming Web Browser Processes Materially Narrowed the Reissue                               21
                 Claims, and the Narrowing Was Related to the Surrendered Subject
                 Matter

i

D. Google's Motion For Judgment as a Matter of Law For Anticipation Of Claim 67 Should Be Denied    22

   1. Google Failed to Prove that the Greenborder System ("GB") Qualilfies as Prior Art to the Asserted Claims    22

   2. Claim 67 of the '528 Patent is Not Anticipated Because Joshi and GB Do Not Disclose Passing of Website Data    24

   3. Claims 49, 43 and 5 are Nonobvious

     a) No Passing of Downloaded or Website Data (Claim 43, Claim 49)    25

     b) No Initialization of Second Web Browser Process by First Web Browser Process/Open on Command (Claim 43, Claim 49)    26

     c) No Secure Web Browser Process (Claim 49)    26

     d) No Intelligent Cellular Telephone Capability ("ICTC") (Claim 43)    27

     e) No Combining and Displaying (Claim 5)    27

     f) No Protected Mode (Claim 5)

     g) No Evidence to Support Combination of Joshi and Hasbun for Multi-Core Processor by One Of Skill In The Art (Claim 49 and Claim 5)    28

     h) Secondary Considerations Support the Jury Conclusion of Non-Obviousness    29

III. CONCLUSION    30

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*All Dental Prodx, LLC v. Advantage Dental Prod., Inc.*, 309 F.3d 774 (Fed. Cir. 2002)                              8

*Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354 (Fed. Cir. 2014)                                        2

*Asetek Danmark A/S v. CMI USA, Inc.*, 100 F. Supp. 3d 871 (N.D. Cal. 2015)                                  12, 13, 14

*B.E. Meyers & Co. v. United States*, 47 Fed. Cl. 200 (2000)                                                   18, 19

*Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA Inc.*, No. 6:15-CV-00163-JDL, 2017 WL              12
568712 (E.D. Tex. Feb. 13, 2017)

*Convolve, Inc. v. Dell Inc.*, No. 2:08-CV-244-RSP, 2014 WL 202622 (E.D. Tex. Jan. 17,                 15
2014)

*David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016)                           16

*Forest Labs., Inc. v. Ivax Pharm., Inc.*, 501 F.3d 1263 (Fed. Cir. 2007)                                          1

*Graham v. John Deere,* 383 U.S. 1 (1966)                                                                         25

*Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472 (Fed. Cir. 1998)                                          2, 8, 16

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010)                                             6, 27

*In re Amos*, 953 F.2d 613 (Fed. Cir. 1991)                                                                        2

*In re Buchner*, 929 F.2d 660 (Fed. Cir. 1991)                                                                 11, 29

*In re Clement*, 131 F.3d 1464 (Fed. Cir. 1997)                                                                    2

*In re Depomed Patent Litigation*, No. 13-4507, 2016 WL 7163647 (D.N.J. Sept. 30, 2016)                            2

*In re Farrow*, 554 F.2d 468 (C.C.P.A. 1977)                                                                       8

*In re Hounsfield*, 699 F.2d 1320 (Fed. Cir. 1983)                                                                 8

*In re Mead*, 581 F.2d 251 (C.C.P.A. 1978)                                                                         8

*In re Peters*, 723 F.2d 891 (Fed. Cir. 1983)                                                                      8

*In re Weiler*, 790 F.2d 1576 (Fed. Cir. 1986) .......... 8

*In re Wilder*, 736 F.2d 1516 (Fed. Cir. 1984) .......... 10

*In re Youman*, 679 F.3d 1335 (Fed. Cir. 2012) .......... 1, 2

*McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339 (Fed. Cir. 2001) .......... 3, 15

*Medtronic, Inc. v. Guidant Corp.,* 465 F.3d 1360 (Fed. Cir. 2006) .......... 2

*Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366 (Fed. Cir. 2001) .......... 2

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358 (Fed. Cir. 2009) .......... 8

*Salazar v. Procter & Gamble Co*., 414 F.3d 1342 (Fed.Cir.2005) .......... 18

*Spectra-Physics, Inc. v. Coherent, Inc*., 827 F.2d 1524 (Fed. Cir. 1987) .......... 3

*Structural Rubber Prod. Co. v. Park Rubber Co*., 749 F.2d 707 (Fed. Cir. 1984) .......... 3

*Syneron Med. Ltd. v. Viora Ltd.*, No. 2:14-cv-639, 2015 WL 1952360 (E.D. Tex. Apr. 10, 2015) .......... 18

*Texas Advanced Optoelectronic Sols., Inc. v. Intersil Corp. See* No. 4:08-cv-451, 2016 WL 1659926 (E.D. Tex. Apr. 26, 2016) .......... 1

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co*., 308 F.3d 1167, 1188 (Fed. Cir. 2002) .......... 3

*U.S. Indus. Chems. v. Carbide & Carbon Chems. Corp*., 315 U.S. 668 (1942) .......... 3

*Viva Healthcare Packaging USA Inc. v. CTL Packaging USA Inc*., 197 F. Supp. 3d 837 (W.D.N.C. 2016) .......... 4

*Warsaw Orthopedic, Inc. v. NuVasive, Inc*., 824 F.3d 1344 (Fed. Cir. 2016) .......... 4

*Wi-Lan USA, Inc. v. Alcatel-Lucent USA, Inc.*, No. 12-23568-CIV, 2013 WL 4811233 (S.D. Fla. Sept. 9, 2013) .......... 18

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) .......... 6

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10CV0541-LAB WVG, 2012 WL 1721255, (S.D. Cal. May 16, 2012) .......... 18

## **<u>Statutes</u>**

35 U.S.C. § 102                                                                          1

35 U.S.C. § 103                                                                          1

35 U.S.C. § 251                                                                      1, 12

Plaintiffs Alfonso Cioffi, Melanie Rozman, Megan Rozman, and Morgan Rozman (collectively, "Plaintiffs") respectfully oppose defendant Google, Inc.'s ("Google") Motion for Post-Trial Relief on Invalidity Under 35 U.S.C. §§ 102, 103 and 251 ("Mot."). Google continues its defense strategy of raising every possible defense regardless of merit. By its two motions (ECF 292, 293), Google raises over a dozen separate grounds for (i) why it does not infringe, (ii) why the asserted claims are invalid, (iii) why the $20 million verdict is unsupported, and (iv) why it did not get a fair trial. None carry the day. The jury's verdict was supported by substantial evidence, and Google failed to show by clear and convincing evidence that the asserted claims were invalid. For the reasons set forth herein, the Court should deny Google's Motion.

## I.      LEGAL STANDARD

### A.      Judgment as a Matter of Law and Motion for New Trial.

The Court is familiar with the legal standards for granting judgment as a matter of law ("JMOL") under Rule 50(b) and a new trial under Rule 59. Accordingly, Plaintiffs simply note their agreement with the standards set forth in *Texas Advanced Optoelectronic Sols., Inc. v. Intersil Corp.*, No. 4:08-cv-451, 2016 WL 1659926, at *2 (E.D. Tex. Apr. 26, 2016).

### B.      The Reissue Statute, 35 U.S.C. § 251 – Recapture and The Original Patent Rule.

The reissue statute, 35 U.S.C. § 251, provides in relevant part that "[w]henever any patent is, through error, deemed wholly or partly inoperative … the Director shall … reissue the patent for the invention disclosed in the original patent.… No new matter shall be introduced into the application for reissue." The Federal Circuit has always held that the statutory requirement of Section 251 is a legal question for the Court that involves underlying determinations of fact that should not be disturbed unless they are "clearly erroneous." *In re Youman*, 679 F.3d 1335, 1343 (Fed. Cir. 2012); *Forest Labs., Inc. v. Ivax Pharm., Inc.*, 501 F.3d 1263, 1270 (Fed. Cir. 2007);

1

*Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1373 (Fed. Cir. 2006); *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1370 (Fed. Cir. 2001); *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1479 (Fed. Cir. 1998); *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997).

## 1.   The Original Patent Rule Under 35 U.S.C. § 251.

"[T]he essential inquiry under the 'original patent' clause of § 251 … is whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees." *In re Amos*, 953 F.2d 613, 618 (Fed. Cir. 1991). "A reissue application must find support in the original patent's description such that the original description 'clearly allow[s] persons of ordinary skill in the art to recognize that the inventor invented what is claimed.'" *In re Depomed Patent Litig.*, No. 13-4507, 2016 WL 7163647 at *28 (D.N.J. Sept. 30, 2016) (quoting *Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1362 (Fed. Cir. 2014)). The original patent rule requires that reissue claims must be to matter "explicitly disclosed and taught rather than merely suggested or indicated in the specification." *Id.* (citation omitted).

## 2.   The Rule Against Recapture Under 35 U.S.C. § 251.

The rule against recapture involves a three part test. *In re Youman*, 679 F.3d at 1345. The Court properly instructed the jury on recapture as follows:

> First, Google must show that the reissue claims are broader in scope than the original patent claims in some aspect…. Second, Google must show that the broader aspect of the reissue claims relates to subject matter surrendered during prosecution of the '247 patent…. Third, Google must show that the reissue claims are not materially narrowed in other aspects relative to the original claims of the '247 patent such that full or substantial recapture of the subject matter surrendered during prosecution is avoided. If the narrowing is unrelated to the surrendered subject matter, the recapture rule is violated. If the narrowing is related to the – to surrendered subject matter, it must render the issue – the reissue claim narrower than it is broader in a manner pertinent to the subject matter surrendered during prosecution; otherwise the recapture rule is violated.

TT (ECF 272) at 45:15-46:13. The Court also instructed the jury that it should not reach the issue of recapture if it found the challenged reissue claims "are directed towards overlooked aspects of

the invention … in the original patent, which is the '247 patent in this case." *Id.* at 46:14-19.

C.   **Invalidity Under 35 U.S.C. §§ 102, 103 (Anticipation and Obviousness).**

For anticipation, Google "was required to prove by clear and convincing evidence that every limitation of [Plaintiffs'] asserted claims was contained, either expressly or inherently, in a single prior art reference." *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1188 (Fed. Cir. 2002). "[A] party seeking a judgment that a patent is obvious bears the burden of demonstrating by clear and convincing evidence that the teachings of the prior art would have suggested the claimed subject matter to one of ordinary skill in the art." *Id.* at 1187.

II.   **ARGUMENT**

A.   **Google's Motion for New Trial Should be Denied.**

Google raises several arguments why a new trial is required. None have merit. First, Google is wrong that Section 251 defenses are pure questions of law like claim construction that cannot be submitted to the jury. The Federal Circuit has repeatedly held that Section 251 defenses are questions of law for the Court reviewed *de novo*, <u>but</u> with underlying fact determinations made by the jury that are reviewed for substantial evidence. *See supra* § I(B). The Supreme Court's decision in *U.S. Industrial Chemicals v. Carbide & Carbon Chemicals Corp.* is not in conflict with submitting underlying factual question to the jury, because that case did not address the issue. 315 U.S. 668, 678 (1942). Section 251 defenses are analogous to enablement, obviousness, and indefiniteness—all of which involve legal questions for the Court based on underlying fact disputes to be resolved by the jury.[1]

---

[1] *See*, *e.g.*, *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987) ("Although enablement is ultimately a question of law, this court has recognized that there may be underlying factual issues involved. The court may submit legal issues such as enablement to the jury under Rule 49(a), but if it does, the court may not make subsequent findings which overrule an implicit and inherent finding of the jury."); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1349 (Fed. Cir. 2001) (submitting obviousness as "a question of law" to the jury); *Structural Rubber Prod. Co. v. Park Rubber Co.*, 749 F.2d 707, 720 (Fed. Cir. 1984) ("a trial

Second, it is neither inappropriate nor prejudicial for the jury to consider the prosecution history and specification. *See* Mot. at 8. Juries routinely consider a patent's specification for fact questions such as written description. Google relies on *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, but that case merely states that "[w]e have previously held that it is improper for juries to hear conflicting expert testimony on the correctness of a claim construction, given the risk of confusion." 824 F.3d 1344, 1350 (Fed. Cir. 2016).

Third, Google did not even use the full 12-hours it requested, nor did it ask for more time, nor object to the Court's time limits. Rather, Google agreed in the joint pre-trial order to submit its Section 251 defenses to the jury, agreeing to jury instructions on both defenses (ECF 200-7 at 56-58) and listing both defenses in the joint proposed verdict form (ECF 200-8). Google reversed course on the eve of trial, informing Plaintiffs and the Court that its Section 251 defenses should not be submitted to the jury. Declaration of Eric W. Benisek in Support of Plaintiff's Opposition to Google's Motion For Post-Trial Relief On Invalidity, Ex. A. Plaintiffs objected to Google's reversal based on Federal Circuit precedent. ECF 245. Google's prejudice, if any, was self-inflicted by failing to timely raise its new (incorrect) strategy.[2]

### B.    The Court Should Confirm the Jury's Verdict that Google Failed to Prove Violation of the Original Patent Rule.

Google moves for JMOL under the original patent rule on four separate grounds. Each should be denied for multiple reasons. First, Google failed to meet its high burden on all four of its original patent challenges. Google's expert, Dr. Kogan, offered mere conclusory statements

---

court may, with proper instructions, present a patent case to a jury for a general verdict encompassing all of the issues of validity and infringement, or may ask for a general answer on one or more specific legal issues, such as obviousness"); *Viva Healthcare Packaging USA Inc. v. CTL Packaging USA Inc.*, 197 F. Supp. 3d 837, 856-60 (W.D.N.C. 2016) (noting indefiniteness is a question of law, but underlying factual disputes must be submitted to the jury).

[2] Google also argues its prejudice was compounded by the Court's alleged failure to address a claim construction issue. Mot. at 5. Plaintiffs respond to this argument in their Opposition to Google's other post-trial motion for JMOL/new trial (ECF 294).

supporting only two of his four original patent arguments. Second, there is substantial evidence that the asserted claims are disclosed in an explicit and unequivocal manner to a POSITA. Finally, Google waived its third and fourth original patent arguments by not presenting ***any*** affirmative evidence at trial.

       **1.**      <u>**Google Failed to Show that the Specification Does Not Disclose a "First Web Browser Process" in Violation of the Original Patent Rule.**</u>

Google is wrong that "[t]here is no clear and unequivocal disclosure in the '247 Patent specification" of the term "first web browser process." *See* Mot. at 15. As background, Claim 5 of the '528 Patent and Claim 49 of the '529 Patent were narrowed in reissue from "logical processes" to "web browser processes." The other two asserted claims (Claim 67 of the '528 Patent and Claim 43 of the '500 Patent) were narrowed in reissue from "logical processes" to "web browser processes," but were broadened by dropping the "two electronic data processors" limitation, to be intermediate in scope. It is Google's burden to show by clear and convincing evidence that a POSITA reading the specification would NOT identify "a ***first*** process accessing website data" as "clearly and unequivocally disclosed." Google fails to meet that burden.

Google's evidence is wholly lacking. Google's expert, Dr. Kogan, opined that the "interactive network process" embodiment of Figure 6, discussed in Column 14, is limited to "online gaming" and does not involve accessing website data. TT (ECF 268) at 145:5-146:4. Thus, the processes accessing "interactive network process status data" from the network are not accessing "website data" and cannot fit the Court's definition of "web browser process." *Id*. However, Dr. Kogan's argument rests on an improperly narrowed interpretation of Figure 6's embodiment, which is instead described as an "interactive network process" that ***may be used***,

for example, for "online gaming."[3]  Therefore, the inventors expressly did not limit "interactive network process" to online gaming, and instead stated that online gaming was but one example of an interactive network process.  *See e.g., Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346-47 (Fed. Cir. 2015) ("This court has repeatedly 'cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.'").

Moreover, Figure 6 itself refers to the broader "interactive network process" and denotes "interactive network process status data" being received from the network connection (step 620), the first process on P1 receiving the "interactive network process status data" from P2 (step 640), and that the "updated interactive network process status data" is passed back to the network via the network connection (step 660). PTX-001, Figure 6. Prof. Dunsmore disagreed with Dr. Kogan's unsupported narrowing of Figure 6 and Column 14, and opined that a POSITA would recognize it as disclosing two processes executing on two processors, both accessing data from the network, and therefore, disclosing a first and second web browser process.[4] TT (ECF 271) at 9:21-10:21.

Google further contends that P1 and P2 in Column 14 refer to physical processors, not processes. Mot. at 15. However, this contradicts the clear language of the specification as a whole. The co-inventor, Mr. Cioffi, explained that all the figures specifically refer to P1 and P2 as physical processors, but they also by definition refer to the first logical process on P1 and the second logical process on P2. TT (ECF 263) at 135:7-136:15. The Summary of the Invention

---

[3] The specification notes in several places that "online gaming" is just an example of an interactive network process. PTX-001, Col. 14:3, 30-31.

[4] The jury could have simply rejected Dr. Kogan's unsupported supposition that online gaming is limited to receiving data from game servers as opposed to website data from web servers. Many online games are played using web browsers—as when Mr. Cioffi's son crashed the family computer while playing an online game through Internet Explorer. TT (ECF 263) at 132:5-11; *see e.g., i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010) ("The jury was entitled to hear the expert testimony and decide for itself what to accept or reject.").

never refers to physical processors, but instead repeatedly notes that an "object of the present invention" is to provide a computer system capable of executing instructions in a "first logical process" and "second logical process," and that malware "downloaded from the network and executing as part of the second logical process is incapable of initiating access to the "first memory space." PTX-001, Col. 7:63-8:19. This is described in Column 16, which makes clear that the functions carried out by the processors "may comprise separate, secure logical processes." *Id.*, Col. 16:23-24. The inventors specifically note that the functions of P1 120 in Figure 1 may be carried out by a first logical process, and the functions of P2 140 may be carried out by a second logical process:

> [a] computer system 100 constructed in accordance with the principles of the present invention would be capable of disallowing a secure logical process, such as the second logical process described above, access to certain memory spaces, and/or disallowing a secure logical process from initiating access to another logical process. For example, the functions carried out by P2 140 (FIG. 1) may comprise a secure logical process, which may be configured to be unable to automatically initiate access to either M1 110 or another logical process performing the functions of P1 120.

*Id.*, Col. 16:34-43. Google admits that P1 and P2 described in Column 14 refer back to elements 120 and 140 of Figure 1, but nonetheless still tries to argue that P1 and P2 refer only to physical processors.[5] Google's attorney argument is contrary to the specification.

Moreover, Dr. Kogan's conclusory opinion, and Google's belated attorney argument, fails to overcome Prof. Dunsmore's opinion testimony that Figure 6 and Column 14 disclose a first and second web browser process. TT (ECF 271) at 9:21-10:21. While the exact term "web browser process" does not appear in the specification, overwhelming evidence adduced at trial demonstrates that a POSITA would identify the "web browser processes" of the new claims as

---

[5] Mot. at 15 (arguing "both P1 and P2 refer back to elements 120 and 140 in Figure 1" in the discussion of Figure 6 in Column 14); Dr. Kogan similarly agreed that computer system 100 referred to in the discussion of Figure 6 ties back to Figure 1 and the two processors, P1 and P2. TT (ECF 268) at 145:8-10.

clearly and unequivocally invented and disclosed by the inventors. *See All Dental Prodx, LLC v. Advantage Dental Prod., Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002) ("In order to comply with the written description requirement, the specification 'need not describe the claimed subject matter in exactly the same terms as used in the claims; it must simply indicate to persons skilled in the art that as of the [filing] date the applicant had invented what is now claimed.'")[6]

First, Mr. Cioffi explained that the original invention was conceived in 2004 from a severe malware attack that arose from his son's use of Internet Explorer ("IE") to play games on the Internet, and thus was always directed in part to web browsers. TT (ECF 263) at 132:5-11. Mr. Cioffi further explained that the specification disclosed "logical processes" and "interactive network processes" that included "web browser processes within their definition."[7]

Second, Google concedes that "web browser processes" are a narrower sub-species of "logical processes" described throughout the specification.[8] Google's invalidity expert, Dr. Arbaugh, called the "first logical process" the "same as the first web browser process." TT (ECF 268) at 67:21-68:4. Plaintiffs' validity expert, Prof. Dunsmore, opined that a logical process

---

[6] While this was a written description case and did not deal with Section 251, the Federal Circuit has stated repeatedly that the original patent rule inquiry under Section 251 is akin to a written description analysis under Section 112 ¶ 1. *See e.g., Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1367 (Fed. Cir. 2009) ("The essential inquiry for the 'original patent' requirement is 'whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees.' This inquiry is analogous to the written description requirement under § 112 , ¶ 1."); *see also, Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1484 (Fed. Cir. 1998); *In re Weiler*, 790 F.2d 1576, 1581 (Fed. Cir. 1986); *In re Peters*, 723 F.2d 891, 894 (Fed. Cir. 1983); *In re Hounsfield*, 699 F.2d 1320, 1323 (Fed. Cir. 1983); *In re Mead*, 581 F.2d 251, 256 (C.C.P.A. 1978); *In re Farrow*, 554 F.2d 468, 473 (C.C.P.A. 1977).

[7] TT (ECF 263) at 122:15-124:19; *see also* PTX-001 ('247 Patent), Col. 6:16-18 (describing interactive applications as "gaming, messaging, and browsing.").

[8] *See* ECF 292 at 11 ("by broadly reciting 'logical processes,' the originally filed '247 Patent claims indisputably encompassed web browser processes, including a first web browser process") and 12 ("[c]hanging the originally filed claims of the '247 Patent to recite a 'first web browser process' requires revising only one term, 'first logical process,' to a 'first web browser process.' This change is minor given that a 'web browser process' is a type of 'logical process.'"); TT (ECF 262) at 67:21-68:4.

8

could be just about any process, including a "process working with web browsers." TT (ECF 271) at 12:16-24.

Third, Prof. Dunsmore explained that Column 14, lines 28 through 45 of the '247 Patent specification plainly discloses use of a first and second web browser process. TT (ECF 271) at 9:21-10:21. In particular, Column 14 discloses an "interactive network process" that by its plain words contemplates a process interacting with the network. P1 and P2 exchange the interactive network status data from the network connection, and updated interactive network status is sent back to the network. PTX-001, Col. 14:28-45. Prof. Dunsmore explained that a POSITA reviewing Column 14 would understand that P1 and P2 refer to two processes, both of which are accessing data from the Internet, and thus satisfy the Court's definition of "web browser process" (a process capable of accessing website data). TT (ECF 271) at 9:21-10:21. Prof. Dunsmore also explained that Column 16 discloses to a POSITA the various types of processes that could be executed in a secure logical process, including the "functions of a web browser program."[9]

Fourth, Figure 1 discloses a first process P1 120 with direct access to the network interface via item 191:



---

[9] TT (ECF 271) at 7:14-8:9. ("Q. Professor Dunsmore, how would a person of ordinary skill understand or interpret these disclosures that we've just looked at in Column 16? A. Well, a person of ordinary skill would realize that there could be a – a number of things that could be done by these process. And among those would be processes that are -- processes that are part of a web browser.").

9

PTX-001, Figure 1 (highlighting added). Mr. Cioffi gave unrebutted testimony that "Item 191 is a communication line from the first processor to the network interface device," and discloses that a "first process and the first processor also have access to the network interface device and the network." TT (ECF 263) at 97:18-23.[10]

It is undisputed that a web browser process falls within the original scope of the "logical processes" disclosed throughout the specification, and thus would be recognized by a POSITA as disclosed in the original patent. Indeed, Dr. Arbaugh called a "logical process" and "web browser process" essentially the same thing. TT (ECF 268) at 67:21-68:4. Prof. Dunsmore explained that Figure 6 discloses using two processes capable of accessing website data (e.g. "web browser processes") to carry-out the inventors' "interactive network process" embodiment. TT (ECF 271) at 9:21-10:21. Therefore, substantial evidence supports the jury's implicit finding that a POSITA would consider a first process capable of accessing website data (i.e., a "first web browser process") clearly and unequivocally disclosed under Section 251. *See e.g., In re Wilder*, 736 F.2d 1516, 1520 (Fed. Cir. 1984) ("It is not necessary that the claimed subject matter be described identically, but the disclosure originally filed must convey to those skilled in the art that applicant had invented the subject matter later claimed."); *see also supra* n.8 (citing cases).

### 2.    Google Failed to Prove the Specification Does Not Properly Disclose Use of a "Single Processor" in Violation of the Original Patent Rule.

Google also argues the specification fails to disclose a single electronic data processor embodiment. Mot. at 17. However, the specification is clear that the invention can be carried out using two logical processes on a "single processor." In Column 16, the specification states "*the functions carried out by processors 920 and 940 may comprise separate, secure logical*

---

[10] The Court considered Item 191 in its original Claim Construction Order. The Court found the disclosure "probative" in overruling Google's invaldity challenge that having a first web browser process with access to the network was contrary to the specification. ECF 71 at 41-48.

*processes* ***executing on the same physical processor***." PTX-001, Col. 16:22-24 (emphasis

added). Prof. Dunsmore explained that this disclosure makes clear to a POSITA that the

invention could be executed on a single processor.[11] TT (ECF 271) at 6:24-7:11, 8:2-15. He also

explained that the specification's teaching that "[p]rocessor 960 may further comprise multiple

processor cores" signals to a POSITA that the invention <u>may</u> be executed on multiple processor

cores, but could also be executed on a single processor. *Id.* at 6:10-23; PTX-001, Col. 16:8-12.

In opposition, Google argues that Prof. Dunsmore reads the specification incorrectly. Yet,

Dr. Kogan offered no evidence whatsoever as to whether the specification disclosed a single

processor embodiment except to offer his conclusory opinion that the single processor claims are

not supported by the specification:

> Q. And finally, have you heard of something called the original patent rule?
>
> A. Yes, I have.
>
> Q. And have you reached any conclusions regarding that rule?
>
> A. Yes, I have. The original patent rule, as a result of it, the – the patents that the claims with one single processor are not supported by the specification, and, therefore, by the original patent rule, they are invalid. Trust me, the original patent rule is big and ugly, and I can't remember all the legal standards specifically, but it speaks to if the specification doesn't call out exactly what's being asked for, you can't have it. And so the original patent rule is – renders the two claims with a single processor invalid….

TT (ECF 268) at 150:15-151:6; *see In re Buchner*, 929 F.2d 660, 661 (Fed. Cir. 1991) ("[A]n

expert's opinion on the ultimate legal issue must be supported by something more than a

conclusory statement.").

In the absence of any facts to support Dr. Kogan's opinion, and his inability to recall the

requirements of the original patent rule, Google instead relies on attorney argument that Column

---

[11] Google argued at claim construction that nowhere in the specification was there a disclosure of a single processor embodiment. ECF 71 at 41. The Court overruled the argument as inappropriate for claim construction, noting there was nothing logically inconsistent with a single processor embodiment and the specification's "core security teachings," citing the same language identified by Prof. Dunsmore. ECF 71 at 52.

16 does not actually disclose executing both logical processes on a single physical processor. *See* Mot. at 17-19. Google's flawed interpretation defies logic. As noted above, the specification clearly states that the functions carried out by the two processors could instead be secure logical processes "***executing on the same physical processor***." Google's unsupported argument and utter lack of facts to support Dr. Kogan's conclusory opinion fail to clearly and convincingly show that the single processor claims violate the original patent rule.

### 3. Google Waived and Failed to Prove the Specification Does Not Properly Disclose a "First Web Browser Process Passing To Or Exchanging Website Data With A Second Web Browser Process" in Violation of the Original Patent Rule.

Unlike Google's prior two defenses where Dr. Kogan at least offered conclusory opinions that certain terms in the reissue patents violated the original patent rule, Google offered no evidence on the purported lack of disclosure for "passing."[12] The only mention Google made of this defense during trial was in its Rule 50(a) motion for JMOL. ECF 251 at 6. Google's failure to proffer *any* evidence regarding the alleged lack of disclosure of "passing" deprived Plaintiffs of *any* opportunity to rebut Google on the issue. Google's failure deprived the Court of *any* expert testimony to resolve the legal question of whether the original patent rule was violated. Google's failure also deprived the jury of the ability to resolve the underlying factual question of whether a POSITA would identify the subject matter of the new claims as invented and disclosed in an explicit and unequivocal manner. Thus, Google waived this defense. *See Asetek Danmark A/S v. CMI USA, Inc.*, 100 F. Supp. 3d 871, 893-94 (N.D. Cal. 2015) (finding waiver of indefiniteness defense).

Google's failure also prevents it from showing by clear and convincing evidence that

---

[12] Google's Rule 50(b) motion claims lack of written disclosure for "passing" and "exchanging," but its Rule 50(a) motion made no mention of challenging the "exchanging" disclosure (ECF 251 at 4-6), so the latter argument is waived on separate additional grounds. *See e.g., Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA Inc.*, No. 6:15-cv-00163-JDL, 2017 WL 568712, at *2 n.2 (E.D. Tex. Feb. 13, 2017).

"passing" is not adequately disclosed under Section 251. In *Asetek Danmark,* the defendant

similarly failed to offer any affirmative evidence, expert or otherwise, in support of its

indefiniteness defense. The court found the defendant failed to prove its defense because:

> (1) CMI adduced no evidence at trial regarding indefiniteness as it pertained to the term 'substantially circular,' which is the only term it relies on in its post-trial briefing; (2) evidence from experts is necessary to help the Court assess what a person of ordinary skill in the art would know or find indefinite; and (3) CMI bears the burden of establishing invalidity due to indefiniteness. As a result, even if the Court did not find waiver, the Court would be compelled to find that CMI did not carry its burden to prove, by clear and convincing evidence, that Asetek's patents are invalid for indefiniteness.

*Id.* at 894. Like the defendant in *Asetek*, Google adduced no evidence at trial regarding the

Section 251 defense of no "passing" and therefore cannot legally satisfy its burden.

Moreover, substantial evidence establishes that "passing" is adequately disclosed under

the original patent rule. As discussed above, Column 14 discloses passing "interactive network

process status data" from the network between P1 and P2, and Prof. Dunsmore testified that a

POSITA would interpret P1 and P2 as "web browser processes" because both are capable of

accessing website data. In finding the claims not invalid, the jury agreed with Plaintiffs.

### 4. Google Waived and Failed to Prove the Specification Does Not Properly Disclose a "First Web Browser Process Initializing A Second Web Browser Process" in Violation of the Original Patent Rule.

Google also waived its Section 251 defense that the specification does not disclose the

"first web browser process initializing a second web browser process" of Claim 49. Google again

offered no evidence for this defense at trial, and only mentioned it in its Rule 50(a) motion for

JMOL. ECF 251 at 6. Thus, Google waived this defense for the same reason it waived its defense

on the "passing" limitation.

Google similarly fails to establish by clear and convincing evidence that "first web

browser process initializing a second web browser process" is not adequately disclosed under the

original patent rule. Google provided no expert testimony to allow the Court to assess how a POSITA views the specification. Accordingly, Google did not carry its burden to prove by clear and convincing evidence that Claim 49 violated the original patent rule. *Asetek Danmark*, 100 F. Supp. 3d at 894.

Moreover, substantial evidence supports the proper disclosure under Section 251 of a "first web browser process initializing a second web browser process." Figure 2 of the '247 Patent describes P1 instructing P2 to initiate a "protected process" and open a process window (step 220). PTX-001, Fig. 2. The specification's description of Figure 2 notes the "1st processor 120 instruct[ing] 2nd processor 140 to initiate the protected process and open one or more process windows." *Id*, Col. 11:4-6. The specification further explains that the protected process may be "browsing the internet." *Id.* Col. 11:6-10. In another embodiment, the specification discloses "P1 120 instruct[ing] processor P2 140 to initiate a protected process and open a process window." *Id.* Col. 17:16-18. Google argues that reference to P1 is limited to a physical processor and therefore P1 cannot be viewed as a web browser process, but as discussed above, Column 16 makes clear that P1 and P2 can equally refer to a logical processes, and Google's expert conceded that a web browser process is just a type of logical process. *See* TT (ECF 268) at 67:21-68:4. In finding the claims not invalid, the jury agreed with Plaintiffs.

### C.   The Court Should Confirm the Jury's Verdict that Google Failed to Prove Recapture.

Google previously moved for summary judgment under 35 U.S.C. § 251 for improper recapture on Plaintiffs' single processor claims. ECF 148 at 12-27. Plaintiffs opposed on three grounds: (1) Google did not identify the proper scope of the surrendered subject matter; (ii) the inventors materially narrowed of the reissue claims in a way related to the surrendered subject matter; and (iii) the challenged reissue claims were directed towards "overlooked aspects" of the

original '247 Patent. ECF 171 at 19-25. The Court found a material dispute of fact on whether the reissue claims were directed to "overlooked aspects" and therefore denied Google's motion without reaching the other factual disputes. ECF 212 at 9-10. At trial, these underlying fact issues were submitted to the jury with instructions setting forth the three-part recapture test and threshold question regarding overlooked aspects.[13] The jury found in Plaintiffs' favor on all counts. *See e.g., Convolve, Inc. v. Dell Inc.*, No. 2:08-cv-244-RSP, 2014 WL 202622, at *2 (E.D. Tex. Jan. 17, 2014) ("[T]he Court must presume that the jury resolved all underlying factual disputes in favor of the verdict and must accept the jury's findings if supported by substantial evidence."). It is Google's burden to show that each of the jury's factual findings are not supported by substantial evidence, which it cannot. *See McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1350 (Fed. Cir. 2001).

### 1.    Claim 67 and Claim 43 are Directed Toward Overlooked Aspects of the Original '247 Patent.

The Court did not reach the question of improper recapture in Google's summary judgment motion because of the underlying fact dispute as to whether the reissue claims were "directed to overlooked aspects of the invention." ECF 212 at 7. At trial, the Court instructed the jury that "[o]verlooked aspects are defined as patentably distinct inventions, embodiments, or species not originally claimed in the original patent, which is the '247 Patent in this case—not mere incidental features of the originally-claimed invention." TT (ECF 272) at 46:14-19. By returning a verdict in Plaintiffs' favor, the jury rejected Google's arguments that the reissued claims were not directed to overlooked aspects of the invention in the original patent. *See e.g., Convolve*, 2014 WL 202622, at *2. Google raises three arguments for setting aside the jury's

---

[13] Google did not object to the substance of the jury instruction on recapture, only that the jury should not be instructed on the issue of recapture. TT (ECF 272) at 5:20-6:6:2. Despite claiming recapture was a Court issue, Google did not file, or request to file, any proposed findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.

findings, none of which overcome the substantial evidence supporting the jury's finding that the reissue claims were directed towards overlooked aspects. *See* Mot. at 10-13.

> ### a) Google Is Wrong that "Web Browser Processes" Were Originally "Claimed."

Google's first argument is that the original claims of the '247 Patent, as filed, were broad enough to encompass "web browser processes" and therefore "web browser processes" must have been "claimed." Mot. at 10-11. This argument is not supported by law or fact. Google cites *Hester Industries* for the proposition that if the new embodiments were "potentially" covered by the originally filed patent claims, they cannot be considered "overlooked." *Id.* at 10. In *Hester Industries*, the embodiments claimed to have been overlooked were *explicitly* recited in the original filed patent claims and thus could not be considered "overlooked." 142 F.3d at 1483. That is not the case here. Originally-filed claim 1 discloses a first logical process with access only to the first memory space and second memory space. PTX-007 at R00000587. Google points to Prof. Dunsmore's testimony that if the original claims of the '247 Patent are read broadly enough, they may not necessarily exclude a "first web browser process with access to website data." Mot. at 14. However, claims cannot be construed in a vacuum (i.e., reference to the intrinsic record is necessary),[14] and Google's own experts and the Court have already interpreted the original '247 Patent as excluding the very embodiment Google claims is covered by the original claims.

The Court previously ruled that "the essence of the invention claimed in the '247 Patent was isolation—only the second logical process could access the network; the rest of the system could not." ECF 212 at 8. Google's expert, Dr. Arbaugh, confirmed it was his opinion that the original '247 Patent required a second processor to isolate the computer system from the

---

[14] *See David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016) (claims are construed with reference to the intrinsic record).

network. TT (ECF 268) at 112:10-113:7. Google's expert, Dr. Kogan, opined that the reissue patents disclosed a different invention from the original '247 Patent, but inconsistently couched his opinion as applying only for the original patent rule, not for recapture. TT (ECF 270) at 30:5-31:5. Finally, Google conceded under the original patent rule in its Rule 50(a) motion for JMOL that "the invention disclosed in the reissue patents is entirely different from the one disclosed in the original '247 patent …. [The] first logical process ran on the first processor and a second logical process ran on the second processor, and only the second process … was a network-interface program or browser." ECF 251 at 5-6. In summary, Google's argument that "web browser processes" were "claimed" in the original patent cannot overcome the instrinsic record and its own admissions, and is not supported by the caselaw upon which it relies.

### b)   The Patent Discloses Two "Web Browser Processes."

Google argues that there is no embodiment in the specification with "two web browsers." This argument is a rehash of its original patent argument, implicitly rejected by the jury. It should be rejected for the same reasons discussed above in Section II. B.

### c)   The Reissue Claims Are Patentably Distinct.

Google's final attorney argument is that narrowing from first logical process to first web browser process is not patentably distinct because changing "logical" to "web browser" is too "minor" given that a "first web browser process" is a type of logical process. Mot. at 12. Google is incorrect and offered no evidence to establish that claims 67 and 43 were obvious (i.e. not patentably distinct) over the original claims despite the Court's statement that such evidence was necessary for the Court to rule on overlooked aspects. ECF 212 at 9-10.

The best evidence admitted at trial as to whether claims 67 and 43 are patentably distinct over the original '247 Patent claims is the instrinsic record and prosecution of the reissue patents. As described below in Section II.C.2.b., the inventors originally filed for reissue claiming

"browser processes." The examiner rejected the reissue claims as anticipated and obvious in light

of Narin because it disclosed an isolated first process and unisolated second process executing on

a single processor. PTX-010 at R00001787-1805. The inventors argued that their first "browser

process" was distinct from Narin because it was not isolated like Narin's first process. *Id*. at

R00001868-871. The examiner responded that the claims did not specify the first process as a

"web" process capable of accessing website data. *Id*. at R00001911-912. In response, the

inventors added "web" to specify the reissue claims were directed to "web browser processes"

and that the first web browser process was capable of accessing website data. PXT010 at

R00001971-73, 1990-91. In response, the examiner withdrew his rejections and allowed the

claims. *Id*. at R00002025. Since the examiner is a POSITA, or at a minimum informs how a

POSITA would interpret the claims,[15] the withdrawal of the obviousness rejection in response to

narrowing to "web browser process" is direct and persuasive evidence that the challenged reissue

claims are non-obvious (i.e. patentably distinct) over the original '247 Patent claims.[16]

Plaintiffs' facts are similar to *B.E. Meyers & Co. v. U.S.*, 47 Fed. Cl. 200, 207 (2000),

cited in MPEP § 1412.02(I)(B)(1) as a favorable example of seeking reissue on "overlooked

---

[15] *See e.g., Syneron Med. Ltd. v. Viora Ltd.*, No. 2:14-cv-639, 2015 WL 1952360, at *17 (E.D. Tex. Apr. 10, 2015) ("[S]tatements by the examiner can inform how a person of ordinary skill in the art would interpret the claims.") (citing *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005)); *Wi-Lan USA, Inc. v. Alcatel-Lucent USA, Inc.*, No. 12-23568-CIV, 2013 WL 4811233, at *18 (S.D. Fla. Sept. 9, 2013) ("Patent examiners are presumed to be persons of ordinary skill in the art in the relevant technical field."); *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10CV0541-LAB, 2012 WL 1721255, at *9 (S.D. Cal. May 16, 2012).

[16] In addition to claiming "web browser processes" in the new claims, the inventors further added the limitation of "[a] portable computing and communication device" with an "intelligent cellular telephone capability with a secure web browser including a first web browser process and a second web browser process" to Claim 43 of the '500 Patent. PTX-003, Claim 43. None of the original '247 claims were directed to mobile devices or enabled "intelligent cellular telephone capability." Accordingly, as Prof. Dunsmore testified, Claim 43 is directed towards additional patently distinct embodiments not claimed as part of the original '247 Patent. TT (ECF 71) at 13:21-14:4.

aspects."[17] In *B.E. Meyers*, the inventor cancelled a limitation that was added to overcome prior art, and replaced it with a new limitation that gave rise to a separate invention. *Id.* at 206-07. Here, the inventors originally claimed an isolated first logical process and un-isolated second logical process, and added a second electronic data processor during prosecution of the '247 Patent to distinguish Corthell. In reissue, however, the inventors claimed an un-isolated first browser process with access to the Internet that was patently distinct from the '247 claims that disclosed an isolated first browser process that used a second electronic data processor for additional physical isolation. Like *B.E. Meyers*, the inventors' new reissue claims disclosed new embodiments patentably distinct from the original '247 Patent.

        2.      <u>Google Failed to Establish Recapture Because Claims 43 and 67 Were Materially Narrowed To Avoid Substantial Recapture of the Surrendered Subject Matter (Step Three of the Recapture Test).</u>

In the event the recapture test is triggered, the Court instructed the jury that to prove step three of the improper recapture test, Google must:

> [S]how that the reissue claims are not materially narrowed in other aspects relative to the original claims of the '247 patent such that full or substantial recapture of the subject matter surrendered during prosecution is avoided. If the narrowing is unrelated to the surrendered subject matter, the recapture rule is violated. If the narrowing is related to the surrendered subject matter, it must render the reissue claim narrower than it is broader in a manner pertinent to the subject matter surrendered during prosecution otherwise the recapture rule is violated.

TT (ECF 272) at 46:2-13. Plaintiffs offered substantial evidence that Claims 43 and 67 were materially narrowed to avoid substantial recapture of the surrendered subject matter.

        a)      **The Patent Office Raised Corthell Against the '247 Patent and in Response the Inventors Amended Their Isolated/ Non-Isolated Claims to Add a Second Processor.**

In prosecution of the original '247 Patent, the examiner rejected the original claims, citing Corthell as disclosing every limitation. PTX-007 at R00000651-652. In response, the

---

[17] *See* https://www.uspto.gov/web/offices/pac/mpep/s1412.html.

inventors amended the original claims, adding a "second electronic data processor" to provide

physical isolation between the first and second logical processes. *Id*. at R00000679-680. The

inventors explained why the pending claims were no longer anticipated by Corthell:

> As per claim 1, Examiner believes that Corthell discloses the Applicant's claimed invention. … While Corthell does teach partitioning of the memory space into a primary partition (Figure 2, [block 204]) and a protected partition (Figure 2, [block 206]), *he does not teach or suggest the partitioning of "secure" and "unsecure" instruction execution onto separate electronic data processors.*
>
> In stark contrast, Applicants teach the use of a multi-processor computer having at least a first and second electronic data processor capable of executing instructions using a common operating system. . . . Such a configuration allows for a physical hardware separation or partitioning of instruction execution on physically separate processors (or processor cores), in contrast to Corthell's teaching of executing all instructions on a single electronic data processor. *By physically separating the executing the execution of trusted instructions* (the operating system running on the first electronic data processor, for example) *from untrusted network process instructions* (a Java script downloaded for the internet, for example), a higher level of security may be achieved.

*Id.* at R00000679-680 (emphasis added). To distinguish Corthell's isolated process and open (or

non-isolated) process executing on the same processor the inventors added the second processor

limitation which added physical isolation of the first logical process. *Id.*

### b)   Cioffi and Rozman Pursue Reissue Claims.

As Mr. Cioffi testified at trial, the intent of the new reissue claims was to pursue

unclaimed embodiments disclosed in the original '247 specification. TT (ECF 268) at 97:24-

98:6, 122:15-124:19. In particular, the inventors claimed "browser processes" where the first

process was no longer isolated from the network. PTX-010 at R00001550 (Claim 1), R00001557

(Claim 21). The inventors also dropped use of a second electronic data processor for a number of

the reissue claims. *Id*. Prof. Dunsmore explained that the inventors were able to drop the second

electronic data processor because it was used to isolate the first logical process from the network.

TT (ECF 271) at 13:8-20. But because the first logical process was now a "browser process"

with access to the network (i.e. un-isolated), there was no longer a need for physical isolation

from the network by the second electronic data processor. *Id*.

In the first office action, the PTO raised rejections under recapture and anticipation. The PTO noted that applicants had "removed the limitation that the 'second logical process executing on the second electronic data processor is' capable of exchanging data across a network of one more computers" and that "the reissue claims were not materially narrowed in other respects, and therefore recapture exists." PTX-010 at R00001657-59. The examiner also rejected all the reissue claims as anticipated under the "van der Made" reference but did not re-raise Corthell as prior art. *Id*. at R00001660-65. The inventors explained why there was no recapture and why "van der Made" did not anticipate. *Id*. at R00001747-750. The PTO withdrew its rejection, finding the inventors' arguments "persuasive," but raised a new anticipatory reference, Narin, against all the reissue claims. *Id.* at R00001786-1805.

The inventors attempted to traverse Narin, explaining that Narin's "closed process" was not the same "first browser process" found in the reissue patents because Narin's closed process did not have access to the network. *Id.* at R00001866-871. The examiner acknowledged the inventors' argument that their "first browser process is a web process," but noted the claims did not specify the "claimed browsers are actually <u>web</u> browsers." *Id*. at R00001911-12. In response to this second rejection the inventors narrowed the term "browser process" to "web browser process" and specified that the "first browser process" is "capable of accessing data of a website via the network." *Id*. at R00001973, 1979, 1990-91. The reissue claims were subsequently allowed.

<b>c) Claiming Web Browser Processes Materially Narrowed the Reissue Claims, and the Narrowing Was Related to the Surrendered Subject Matter.</b>

Prof. Dunsmore explained to the jury that by claiming "web browser processes" in the reissue claims instead of the original "logical processes," the inventors materially narrowed the

reissue claims because they now excluded all types of processes other than "web browser processes." TT (ECF 271) at 12:1-13:2.[18] Prof. Dunsmore also explained that this narrowing was directly related to the surrendered subject matter—a single processor embodiment where the first logical process was isolated from the network, but the second logical process was not. *Id.* at 13:3-20, 14:12-19, 14:21-15:22. As the Court previously recognized, the invention claimed in the '247 Patent was "isolation" where "the second logical process could access the network [but] the rest of the system could not." ECF 212 at 8. When the inventors amended the '247 Patent's original claims over Corthell, they added a second electronic processor to provide physical isolation between the first and second logical processes. PTX-007 at R00000672, 679-680; TT (ECF 271) at 28:10-30:8 (Dunsmore). In adding the second physical processor during prosecution of the '247 Patent, the inventors surrendered the isolation embodiment using a single processor. PTX-007 at R00000679-680. Prof. Dunsmore explained that when the inventors later narrowed the reissue claims to web browser processes, the first process was no longer isolated because web browser processes must be capable of accessing website data. TT (ECF 271) at 13:3-20, 14:12-19, 14:21-15:22. Accordingly, because the inventors were no longer claiming isolation of the first logical process from the network, reintroducing single processor claims was not improper recapture.

Google's mistaken argument that the inventors surrendered the single processor embodiment over Corthell ignores the fact that the invention was originally directed to operating on a single processor claiming a first logical process isolated from the network. Accordingly, when the inventors surrendered their single processor embodiment, it was only with respect to the isolation embodiment of the invention where the first logical process was isolated from the

---

[18] Mr. Cioffi testified that narrowing to web browser processes in reissue was a material narrowing directly related to reclaiming the use of a single processor. TT (ECF 262) at 181:3-9.

network. The inventors never surrendered a single processor embodiment of their invention with

a first logical process unisolated from the network. Google's attorney argument fails to overcome

Plaintiffs' substantial evidence that narrowing the reissue claims to "web browser processes"

materially narrowed the claims to avoid substantial recapture of the surrendered subject matter.[19]

    **D.**    **Google's Motion for Judgment as a Matter of Law for Anticipation of Claim 67 Should be Denied.**

        **1.**    **Google Failed to Prove that the Greenborder System ("GB") Qualifies as Prior Art to the Asserted Claims.**

Google failed to present evidence that GB qualified as prior art beyond the self-serving

statements of its own witnesses. The trial record offers no evidence to corroborate that GB was

publicly "known or used by others" before the priority date of the Asserted Claims. At trial,

Google relied solely on the testimony of Mr. Larson to argue that GB was publicly displayed and

sold prior to August 7, 2004. He testified to the sale of GB to two customers and exhibits of GB

at a trade show to purportedly establish the system as prior art. TT (ECF 268) at 20:18-21:13;

37:14-18. However, on cross-examination, Mr. Larson admitted that Google did not proffer any

written agreement of any GB customer and had no knowledge of any customer contracts. *See id.*

at 20:18-21:13. He also testified that any agreement would have been confidential and subject to

an NDA. *See id.* at 21:14-23. Mr. Larson conceded that there was no documentary evidence to

corroborate his testimony about the trade show despite admitting that Google should have had

such documents if they existed. *See id.* at 38:16-39:19.

Despite their confidential nature, Google nonetheless argues that dates on the draft GB

documents corroborate Mr. Larson's testimony. The GB documents, however, are drafts,

suggesting that GB was not operational at the time of drafting nor are there any corroborating

---

[19] Dr. Kogan did not challenge Prof. Dunsmore's evidence or reasoning regarding the third step of recapture except to declare in conclusory fashion that narrowing the reissue claims to "web browser processes" was "not related" to using one or two processors. TT (ECF 268) at 149:2-10.

documents to prove that the system described in the draft documents was the same system allegedly in use prior to the August 7, 2004 priority date. *See, e.g.*, DTX-1092, DTX-1097, DTX-1105, DTX-1115. In addition, Mr. Larson conceded that the GB exhibits shown to the jury were marked confidential and not disclosed to public. *See id.*; TT (ECF 268) at 21:24-24:6. The jury was free to reject Mr. Larson's uncorroborated testimony. Dr. Arbaugh, for his part, did not give the opinion that the version of GB he used in his invalidity analysis was the same that was allegedly sold and displayed, and did not testify to any prior art or public use date for GB. *See* TT (ECF 268) at 117:21-22. The jury did not have to believe Mr. Larson's self-serving testimony in the absence of any corroborating documents.

### 2. Claim 67 of the '528 Patent is Not Anticipated Because Joshi and GB Do Not Disclose Passing of Website Data.

Google focuses its anticipation argument on whether it established by clear and convincing evidence that Joshi/GB meet the fourth element of claim 64, which requires that the first web browser process pass data of at least one website to the second web browser process. PTX-004 at Claim 64*; see also* TT (ECF 270) at 111:10-24, 119:2-6 (Dunsmore). Relying on Dr. Arbaugh's testimony, Google argues that the "Protected and Isolated Contexts communicate website data to each other through various mechanisms." Mot. at 23. Dr. Arbaugh, however, provided only a single example to support his argument: the passing of a URL. *See* TT (ECF 268) at 71:23-73:17. Prof. Dunsmore offered testimony, which the jury believed, that a URL is not website data, and noted that Dr. Arbaugh did not provide any other example of the passing of website data described in Joshi. TT (ECF 270) at 119:7-23, 120:7-23. Prof. Dunsmore also explained to the jury that to permit passing of website data between IE programs in different contexts would defeat the security mechanism of Joshi/GB. *See id.* at 120:19-121:6.

Google failed to establish that Joshi's "drag and drop" feature meets the website data

passing limitation. First, Dr. Arbaugh never opined that Joshi's "drag and drop" constituted passing of website data. *See* TT (ECF 271) at 91:1-12 (Dunsmore). Second, Prof. Dunsmore disagreed with Google's attorney argument and testified that the drag and drop feature could be a display feature construct and not actual passing of website data between separate IE programs. *See id.* at 62:8-18, 90:10-17. The jury could have simply rejected Google's argument based on Prof. Dunsmore's explanation that passing website data would defeat Joshi's security features.

Contrary to Google's argument, Dr. Arbaugh actually testified that the Browser Helper Object, or BHO, was the component that passes the data in Joshi/GB but conceded that the BHO alone is not a browser process. *See* TT (ECF 268) at 123:1-4. Therefore, the passing of URL data between two separate IE programs cannot meet the language of Claim 64.

### 3.    <u>Claims 49, 43 and 5 Are Nonobvious.</u>

Substantial evidence adduced at trial supports the jury's finding that Claims 49, 43 and 5 are not obvious in light of Joshi and either Narin or Hasbun. An inquiry into obviousness requires an evaluation of the scope and content of the prior art, the differences between the prior art and the claims, the skill in the art and any secondary considerations. *Graham v. John Deere,* 383 U.S. 1, 17 (1966). During trial, the jury heard substantial evidence that the scope of the prior art was limited to "whole browser" sandboxing implementations. *See e.g.,* PTX-014; TT (ECF 268) at 34:17-35:19 (Larson). Google's own documents and witnesses presented evidence confirming the per-process sandboxing architecture described in the claims was a solution to prior art techniques of sandboxing the entire browser disclosed in GB and Joshi. *See* PTX-014; TT (ECF 268) at 34:20-35:10 (Larson); *see also* TT (ECF 264) at 25:5-26:8 (Rubin); TT (ECF 270) at 115:8-20 (Dunsmore). Mr. Cioffi testified that he and Mr. Rozman invented a better way to safely browse the web. *See* TT (ECF 263) at 84:19-8:3 (Cioffi). Dr. Rubin testified that the multiple process implementation with process-level sandboxing was an improvement that he was

not aware of prior to the invention of the asserted claims. *See* TT (ECF 264) at 18:1-20:12, 22:5-10. He further testified regarding the limitations of the single process browser and how the claimed invention improved over this prior art. *See id.* at 24:11-4, 28:18-29:1. Thus, the jury could reasonably conclude that the differences between the prior art and claims are significant such that the claims are not obvious. In addition, many claim limitations are not present in the individual combinations as discussed below.

> ### a) No Passing of Downloaded or Website Data (Claim 43, Claim 49).

As discussed above, Joshi does not disclose passing of website data from the first web browser process to the second browser process.

> ### b) No Initialization of Second Web Browser Process by First Web Browser Process/Open on Command (Claim 43, Claim 49).

The evidence at trial established that neither Joshi in combination with Narin or Hasbun disclose the first web browser process "initializ[ing] the at least one second web browser process" (Claim 49) or "open the second web browser process … on command from the first web browser process" (Claim 43). *See* PTX-002; PTX-003. Google argues that the BHO is part of the first web browser process and that the BHO initializes the isolated context. *See* TT (ECF 268) at 83:7-84:20, 123:11-14 (Arbaugh). Dr. Arbaugh, however, conceded that the BHO itself is not a browser process, and that the BHO gives the command to open the second web browser process. *See id.* at 123:1-4, 15-17. Prof. Dunsmore disagreed and testified that the BHO is a separate component from the IE program in Joshi and pointed out that Joshi specifically states that the BHO, not the first IE program, initializes the second IE program. *See* TT (ECF 270) at 123:15-124:20. Given this conflicting expert testimony, substantial evidence supports the jury's finding that the BHO and IE program were separate, and thus, did not satisfy the claim. *See e.g.,*

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010) ("The jury was entitled to

hear the expert testimony and decide for itself what to accept or reject.").

**c)**     **No Secure Web Browser Process (Claim 49)**.

Google also failed to establish by clear and convincing evidence that Joshi in

combination with Hasbun discloses a secure web browser process as set forth in Claim 49. Dr.

Arbaugh testified the "secure web browser process" in Joshi is two "instances" of IE running on

in separate contexts and "together they make up the secure web browser process." TT (ECF 268)

at 81:23-82:19. On cross-examination, however, he was unable to define what an "instance" of

IE was, signaling that his testimony was not credible. *See id.* at 120:1-11. He also disagreed with

Google's own witness, Mark Larson, whose testimony established that the whole IE program in

the isolated context was sandboxed. *Id.* at 122:9-14; PTX-014. Prof. Dunsmore, on the other

hand, affirmatively testified that the two separate IE programs in Joshi did not meet the claim

language. *See* TT (ECF 270) at 117:14-118:13; 122:10-123:14. The jury agreed.

**d)**     **No Intelligent Cellular Telephone Capability ("ICTC")
(Claim 43)**.

Google failed to establish by clear and convincing evidence that Joshi in combination

with Narin discloses an intelligent cellular telephone capability, as set forth in Claim 43. Dr.

Arbaugh testified that Joshi discloses wireless networks which *could* be cellular but admitted that

Joshi "doesn't speak to the cellular directly." TT (ECF 268) at 98:4-7. Rather, he argued that

Narin discloses radio frequencies. *Id.* at 99:13-23. Neither Narin nor Joshi disclose a "cellular

telephone" implementation. DTX-1354; DTX-1335; TT (ECF 270) at 131:5-16 (Dunsmore).

Prof. Dusmore testified that a POSITA would not be motivated to combine Joshi and Narin

because Narin teaches away from Joshi because it specifically denies web access to the secure

process. TT (ECF 270) at 129:5-130:25, 131:1-132:2. Dr. Arbaugh testified that one would make

27

the combination because both references mention malware and Joshi discloses wireless. TT
(ECF 268) at 100:11-20. Yet, he conceded that Narin does not have a first web browser required
by the Court's construction of intelligent cellular telephone capability, which is probative that a
POSITA would not be motiviated to combine the two references. *Id.* at 124:18-23. Moreover, Dr.
Arbaugh never provided any explanation how a POSITA would combine the two references
particularly in light of the lack of a first web browser process in Narin. *See* TT (ECF 270) at
129:5-15 (Dunsmore).

### e)      No Combining and Displaying (Claim 5).

Google argues that the jury should have found that Joshi discloses "displaying, in a
windowed format on a display terminal, data from the first logical process and the second logical
process, wherein a video processor is adapted to combine the data from the first and second
logical processes and transmit the combined data to the display terminal" which is required by
Claim 5 of the '528 Patent. *See* Mot. at 29; PTX-002, Col. 19:6-10. Dr. Arbaugh testified that
this limitation requires two web browser processes be displayed on the screen, which Joshi meets
because it displays the content of both web browser processes in a single user interface. TT (ECF
268) at 105:119-21. However, the actual claim language requires more than display of data. Dr.
Arbaugh provided scant evidence to establish that Joshi discloses a video processor adapted to
combine data from the first and second logical processes and transmit the combined data to the
display. Prof. Dunsmore, on the other hand, described how Joshi does not combine the data for
display and the jury accepted his testimony over Dr. Arbaugh. TT (ECF 270) at 121:19-122:8.

### f)      No Protected Mode (Claim 5).

Google fails to establish the protected mode limitation of Claim 5. Dr. Arbaugh testified
that he relied on Joshi's disclosure of preventing access to the protected context as disclosing
"protected mode" in claim 5. *See* TT (ECF 268) at 106:9-107:1. The claim limitation, however,

28

requires that a second electronic processor be operating in a protected mode. *See* PTX-002, Claims 1 & 5. Dr. Abaugh never mentions a second processor or identified a second processor in Joshi. Prof. Dunsmore testified that Joshi does not disclose a second processor and, therefore, does not disclose a second processor in protected mode. TT (ECF 270) at 125:21-126:17.

Recognizing this flaw, Google argues that "Dr. Arbaugh's opinion for Claim 1 relied on the combination of Joshi with Hasbun." Mot. at 30. But Dr. Arbaugh *never* expressed the opinion that Hasbun's multi-core could be configured in a protected mode, and never uttered the word "Hasbun." *See* TT (ECF 268) at 106:13-107:1. The only limitation for which Dr. Arbaugh made a Joshi/Hasbun combination is the multi-core limitations (discussed below), not protected mode.

### g)   No Evidence to Support Combination of Joshi and Hasbun for Multi-Core Processor by One Of Skill In The Art (Claim 49 And Claim 5).

Google argues that the jury should have found that a POSITA would combine Joshi with Hasbun to meet the multi-core limitation of Claims 5 and 49. Mot. at 27, 30. But Dr. Arbaugh provided only conclusory statements regarding any motivation to combine these two references. At trial, Plaintiffs objected to the introduction of any testimony regarding a POSITA's motivation to combine Joshi and Hasbun as outside the scope of Dr. Arbaugh's expert report. The Court permitted only "boilerplate" testimony. TT (ECF 268) at 92:6-24 (Arbaugh). Thus, Dr. Arbaugh's evidence for motivation was merely that there are "only a finite number of ways to combine malware solutions to give you some predictable results." *Id.* at 96:2-6. This conclusory testimony is insufficient to satisfy Google's evidentiary burden. *In re Buchner*, 929 F.2d 660, 661 (Fed. Cir. 1991).

### h)   Secondary Considerations Support the Jury Conclusion of Non-Obviousness.

Google ignores the overwhelming evidence of secondary considerations that supports

nonobviouness of the asserted claims. Dr. Arbaugh testified on direct that he could find no evidence of secondary considerations to support non-obviousness and failed to address Prof. Dunsmore's opinions. TT (ECF 268) at 108:16-110:9. Indeed, Dr. Arbaugh conceded he only considered four secondary factors. *Id.* at 112:5-9. Prof. Dunsmore, on the other hand, testified at length that real world evidence indicated that a POSITA would not find the claims obvious. In particular, he testified that web browsers utilizing the patented architecture, such as Google Chrome, have enjoyed widespread commercial success. TT (ECF 270) at 125:21-126:17. He also testified based on Google's own documents that the patented web browser architecture satisfied a long felt, but unmet need. *See id.* at 133:8-135:3. Prof. Dunsmore found no evidence of simultaneous invention. *See id.* at 135:4-136:20. And Google's belated effort to patent per-process sandboxing *after* the asserted claims' priority date suggested that Google believed it to be novel in 2008, so it could not have beeen obvious in 2004. TT (ECF 267) at 53:21-55:8; 55:9-56:8 (Upson). Such real world evidence disproved obviousness.

## III.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Google's Motion for Post-Trial Relief on Invalidity Under 35 U.S.C. §§ 102, 103 and 251.

Dated: April 28, 2017                Respectfully submitted,

By: */s/ Eric Benisek*
Eric W. Benisek

Eric W. Benisek
Cal. State Bar No. 209520
Robert S. McArthur
Cal. State Bar No. 204604
VASQUEZ BENISEK & LINDGREN LLP
3685 Mt. Diablo Boulevard, Suite 300
Lafayette, CA 94549
925-627-4250
925-403-0900-Fax

Email: ebenisek@vbllaw.com
Email: mcarthur@vbllaw.com

William E. Davis, III
Texas State Bar No. 24047416
THE DAVIS FIRM, PC
111 West Tyler Street
Longview, Texas 75601
Phone: (903) 230-9090
Fax: (903) 230-9090
Email: bdavis@bdavisfirm.com

Charles Ainsworth
State Bar No. 00783521
Robert Christopher Bunt
State Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 1114
Tyler, TX 75702
903/531-3535
903/533-9687
E-mail: charley@pbatyler.com
E-mail: rcbunt@pbatyler.com

*Counsel for Plaintiffs Alfonso Cioffi, Megan
Rozman, Melanie Rozman, and Morgan Rozman*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this response was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(V). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 28th day April, 2017.


*/s/ Eric W. Benisek*
Eric W. Benisek