IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CIOFFI et al.,<br>　*Plaintiffs*,<br>v.<br><br>GOOGLE, INC.,<br>　*Defendant*. | § § § § § § § § § § § |

Civil Action No. 2:13-cv-103

## MEMORANDUM OPINION AND ORDER REGARDING ONGOING ROYALTY AND SUPPLEMENTAL DAMAGES

Before the Court is the Motion for Ongoing Royalty (Dkt. No. 277) filed by Plaintiffs Alfonso Cioffi, Melanie Rozman, Megan Rozman, and Morgan Rozman (collectively, "Plaintiffs"). Plaintiffs seek imposition of an ongoing royalty for any continued infringement by Defendant Google, Inc. ("Google"), as well as a corresponding reporting requirement. Having considered the Motion, the Parties' briefing, and the relevant authorities, the Court is of the opinion that the Motion should be **GRANTED AS MODIFIED**. The Court hereby sets the ongoing royalty rate at $0.002601 per Chrome user per month—the implied royalty rate determined by the jury.

**I. BACKGROUND**

A jury trial commenced in this case on February 6, 2017. On February 10, 2017, the jury returned a unanimous verdict (Dkt. No. 259) finding infringement and also finding the asserted claims not invalid. The jury awarded damages of $20 million in the form of a running royalty. (Dkt. No. 259.)

Plaintiffs concede that a permanent injunction is not appropriate in this case and instead seek an ongoing royalty to compensate them for future infringement that may occur during the remaining nine years of the infringed patents. (Dkt. No. 277 at 6, 17.) Although Plaintiffs initially indicated in a footnote their intent to seek supplemental damages by a separate motion, at the hearing on this Motion, the Parties agreed instead to apply the ongoing royalty rate determined by the Court to any supplemental damages, thus eliminating the need for an additional motion. (Tr. of Mot. Hr'g, July 6, 2017, Dkt. No. 30 ("Hr'g Tr.") at 45:20–47:12.)

## II. ONGOING ROYALTY

### a. Procedure

At the outset, Google argues that a determination of any ongoing royalty in this case should be deferred until after the Court addresses the Parties' pending JMOL motions. (Dkt. No. 285 at 5.) Google suggests that this Court should instead sever the issue of ongoing royalties from this case and then stay consideration of that issue. (Dkt. No. 285 at 5.)

In this Court's view, it is prudent in this case to address the issue of ongoing royalties now rather than unduly delay the entry of final judgment. *See Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 515 F. App'x 882 (Fed. Cir. 2012) ("[T]he case is not 'final' because the district court has not yet determined ongoing royalties. An ongoing royalty is not the same as an accounting for damages [under 28 U.S.C. § 1292(c)(2)]."). In *Warsaw Orthopedic*, the Federal Circuit dismissed an appeal because the district court had not yet addressed ongoing royalties. *Id*. Although *Warsaw Orthopedic* is a non-precedential decision, it nonetheless provides some level of guidance as to what issues should be included in a final judgment. Moreover, the Circuit's reasoning in that case is consistent with Supreme Court precedent regarding finality of judgments. *See Catlin v. United*

2

*States*, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). Other district courts have agreed, holding that staying the ongoing royalty issue would preclude entry of final judgment, thus preventing the parties from appealing other issues in the case. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2014 WL 6687122, at *7 (N.D. Cal. Nov. 25, 2014). The *Warsaw Orthopedic* reasoning also promotes the policy underlying final judgments—that all issues be addressed through a single appeal rather than through piecemeal appellate practice. As such, the Court is persuaded that it is prudent under the circumstances in this case to address ongoing royalties before entering final judgment.

As to Google's suggestion to sever the issue of ongoing royalties, Google has not presented any case law to suggest that this Court *must* sever and stay the ongoing royalty determination. The Court sees no particular reason to sever this issue in this case.

  **b. Legal Standard**

A court's authority to award an ongoing royalty for continued patent infringement finds its origin in 35 U.S.C. § 283. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1377 (Fed. Cir. 2017) ("We have interpreted that provision [Section 283] to permit a court to award 'an ongoing royalty for patent infringement in lieu of an injunction' barring the infringing conduct." (quoting *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007)). The award of an ongoing royalty is equitable in nature. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1379 (Fed. Cir. 2013) ("*Fresenius II*") ("While we may at times improperly use the term 'damages' as a shorthand term to encompass the concept of the right to some prospective monetary relief, that cannot change the equitable character of that relief.").

### i. Whether an Ongoing Royalty is Appropriate

The Federal Circuit has recognized that "[u]nder some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Paice*, 504 F.3d at 1314. More recently, the Circuit has stated that "absent egregious circumstances, when injunctive relief is inappropriate, the patentee remains entitled to an ongoing royalty." *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 807 F.3d 1311, 1332–33 (Fed. Cir. 2015), vacated in part on other grounds, 137 S. Ct. 954 (2017). However, a court is not required to grant a patentee's request for an ongoing royalty, even where a permanent injunction does not issue. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35–36 (Fed. Cir. 2012); *Paice*, 504 F.3d at 1315. Instead, whether to grant an ongoing royalty is a matter within the district court's discretion, and a court may decide that a forward-looking royalty is not appropriate in a particular case. *See Whitserve*, 694 F.3d at 35.

The question of whether to award an ongoing royalty is guided at least in part by the form and scope of relief awarded by the jury. For example, in *Summit 6, LLC v. Samsung Elecs. Co.*, the jury's damages award took the form of a lump sum royalty. 802 F.3d 1283, 1301 (Fed. Cir. 2015). There, the Federal Circuit held that "the district court properly denied [the plaintiff's] request for an ongoing royalty because the jury award compensated [the plaintiff] for both past and future infringement through the life of the patent." *Id.* at 1300–01. *See also Telcordia Techs., Inc. v. Cisco Sys.*, Inc., 612 F.3d 1365, 1379 (Fed. Cir. 2010) ("An award of an ongoing royalty is appropriate because the record supports the district court's finding that [the plaintiff] has not been compensated for [the defendant's] continuing infringement."); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) ("*Fresenius I*") ("A damages award for pre-verdict

sales of the infringing product does not fully compensate the patentee because it fails to account for post-verdict sales of repair parts. . . . The district court was within its discretion to impose a royalty on those sales of disposable products in order to fully compensate [the patentee] for the infringement."); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2017 WL 3034655, at *2 (E.D. Tex. July 18, 2017) (Bryson, J.) ("*UroPep*") ("[I]t would be improper for the Court first to conclude that the damages awarded by the jury do not cover the post-verdict period, but then to rule that [the plaintiff] is not entitled to any relief for that period."). Accordingly, whether the jury award compensates the patentee for future infringement is important because without some form of prospective relief, the patent owner is effectively forced to "resort to serial litigation" to receive compensation for future infringement. *UroPep*, 2017 WL 3034655, at *2 (quoting *Whitserve*, 694 F.3d at 35).

Where the jury has not expressly indicated the form of its reasonable royalty award, the form of the award may be inferred based on the arguments and evidence presented to the jury during trial, the district court's instructions to the jury, and the verdict form itself. *See Whitserve*, 694 F.3d at 35 (analyzing the evidence at trial and rejecting the argument that the jury awarded a paid-up license). Here the jury's verdict expressly indicates the reasonable royalty was a running royalty as opposed to a lump sum award.

> ii. Setting the Royalty Rate

If a district court finds it appropriate to award an ongoing royalty, the proper royalty rate is "a matter committed to the sound discretion of the district court." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 n.2 (Fed. Cir. 2008). *See also Paice*, 504 F.3d at 1315. Courts routinely use the royalty rate implied by the jury's verdict as the starting point in determining a forward-looking

royalty. *UroPep*, 2017 WL 3034655, at *7 ("Recognizing the importance of the jury's verdict, courts have uniformly held that the starting point for the *Amado* analysis of the ongoing royalty rate is the royalty rate found by the jury for the pre-verdict infringement period."). However, a court has discretion to impose an ongoing royalty rate *higher* than the rate implied by the jury. *See Amado*, 517 F.3d at 1361–62 (rejecting the argument that the post-verdict royalty rate should *necessarily* be equivalent to the implied rate determined by the jury). The patent owner seeking a higher rate bears the burden to show that enhancement of the jury's rate is appropriate in a given case. *UroPep*, 2017 WL 3034655 at *7.

Using the jury's implied royalty rate as a starting point, courts conduct a renewed analysis of a reasonable royalty based on a post-verdict hypothetical negotiation. *UroPep*, 2017 WL 3034655 at *8; *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2014 WL 6687122, at *13 (N.D. Cal. Nov. 25, 2014). In this analysis, "courts have often used the so-called *Georgia-Pacific* factors in assessing how the changed circumstances would produce a royalty rate in a hypothetical post-verdict licensing negotiation that was different from the royalty rate the jury selected based on a hypothetical licensing negotiation at the outset of infringement." *Bianco v. Globus Med., Inc.*, 53 F. Supp. 3d 929, 933 (E.D. Tex. 2014) (Bryson, J.). *See Fresenius I*, 582 F.3d at 1303 (reversing the district court's JMOL ruling and, in light of such reversal, remanding for an analysis of the ongoing royalty rate that would result from a hypothetical negotiation—an analysis that is "influenced by the *Georgia Pacific* factors"). *See generally Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) (outlining the relevant factors). In this post-verdict analysis, courts "focus[] on any new evidence that was not before the jury and additionally any changed circumstances (other than willfulness) between a hypothetical

6

negotiation that occurred [at the time infringement began] (which the jury determined) and a hypothetical negotiation that would occur [] after the judgment (which this Court is determining)." *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 647 (E.D. Tex. 2011), aff'd sub nom. *Mondis Tech. Ltd. v. Innolux Corp.*, 530 F. App'x 959 (Fed. Cir. 2013).

A jury's calculation of a reasonable royalty based on the hypothetical negotiation model involves "ascertain[ing] the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). This approach analyzes the rate a willing licensor and willing licensee would have agreed to before infringement began, with both parties assuming that the patents were valid and infringed. *Lucent Techs.*, 580 F.3d at 1325 ("The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed.").

Where it is clear that the jury's award was based upon an assumption that the patent was infringed and valid, there is a "strong reason for following the jury's lead" in determining the appropriate ongoing royalty rate. *UroPep*, 2017 WL 3034655 at *7. Said another way, the fact that the jury has determined that the patents are *actually* valid and infringed does not necessarily change the analysis. Although the new hypothetical negotiation occurs on the date of the jury verdict, this underlying assumption—that the patents are valid and infringed—has not changed since the date of the hypothetical negotiation considered by the jury. As Judge Byson aptly explained in *UroPep*: "To the extent that the jury can be discerned to have made a decision based on the assumption that the patent was infringed and valid, and to the extent that other considerations do not compel a departure from the jury's assessment of the proper royalty rate, the Court should defer to the jury's decision as the finder of fact . . . ." *UroPep*, 2017 WL 3034655 at *7.

Although the underlying assumptions of validity and infringement have not changed pre-verdict versus post-verdict, the Federal Circuit has nonetheless stated that "[t]here is a fundamental difference [] between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." *Amado*, 517 F.3d at 1361 (quoting *Paice*, 504 F.3d at 1317 ("[P]re-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors." (Rader, J., concurring))). As the *Amado* Court explained: "[p]rior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved." *Amado*, 517 F.3d at 1362. The posture in *Amado*, however, was unique. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1343 (Fed. Cir. 2012) (referring to *Amado* as a "sunset royalty analysis"). There, the district court granted a permanent injunction, then stayed implementation of that injunction until seven days after the resolution of any appeal. *Amado*, 517 F.3d at 1356. After the appeal concluded, the district court dissolved the injunction[1] and awarded the plaintiff a per-unit royalty rate for infringing sales made during the sunset royalty period (the period that the stay of the injunction had been in effect). *Id.* As other courts have reasoned, the analysis in *Amado* may not apply to every case. *UroPep*, 2017 WL 3034655 at *5; *EMC Corp. v. Zerto, Inc.*, No. CV 12-956 (GMS), 2017 WL 3434212, at *3 (D. Del. Aug. 10, 2017). Instead, *Amado* may be limited to cases where a permanent injunction was found to be appropriate. *UroPep*, 2017 WL 3034655 at *5; *EMC*

---

[1] The district court in *Amado* dissolved the permanent injunction in light of *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). However, this aspect of *Amado* is not relevant to the ongoing royalty analysis.

*Corp.*, 2017 WL 3434212, at *3 (distinguishing *Amado* based on *Amado*'s unique posture involving a stay of a permanent injunction).

### c. Analysis

#### i. Whether an Ongoing Royalty is Appropriate

At the outset, a court should first determine whether imposition of an ongoing royalty is appropriate in a particular case. As Google correctly notes, ongoing royalties are a form of equitable relief, and a court may "exercise its discretion to conclude that no forward-looking relief is appropriate in the circumstances." *WhitServe*, 694 F.3d at 35. In this case, the verdict form indicates that the jury's damages award was intended to compensate Plaintiffs only for *past* infringement. (*See* Dkt. No. 259 at 4 (showing the jury's indication that its award took the form of a running royalty rather than a lump sum).) Moreover, neither party has pointed to evidence or arguments presented at trial that would support an argument that the jury award included future infringement. From this, the Court finds it fitting to award an ongoing royalty in this case, as the jury's award fails to compensate Plaintiffs for future infringement. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1301 (Fed. Cir. 2015) (affirming denial of ongoing royalty because "the jury award compensated [the plaintiff] for both past and future infringement through the life of the patent"); *Telcordia Techs., Inc. v. Cisco Sys.*, Inc., 612 F.3d 1365, 1379 (Fed. Cir. 2010) ("An award of an ongoing royalty is appropriate because the record supports the district court's finding that [the plaintiff] has not been compensated for [the defendant's] continuing infringement."); *UroPep*, 2017 WL 3034655 at *2 ("[I]t would be improper for the Court first to conclude that the damages awarded by the jury do not cover the post-verdict period, but then to rule that [the plaintiff] is not entitled to any relief for that period.").

Having determined that the circumstances of this case warrant an ongoing royalty, the Court next turns to the issue of what royalty rate is appropriate.

### ii. Implied Royalty Rate

In this case, the Parties agree that the royalty rate implied by the jury's verdict is $0.002601 per Chrome user per month. (Hr'g Tr. at 23:18–22, 24:11–16.) This rate is supported by the evidence presented at trial. During trial, Plaintiffs' damages expert, Dr. Bratic, opined that a reasonable royalty for past infringement would be $26,275,887, which was calculated based on a running royalty rate of $0.0034 per Chrome user per month, multiplied by about 7.7 billion monthly users.[2] (Bratic Decl. ¶ 5; Dkt. No. 277 at 4–5, 9 & n.1; Trial Tr. Feb. 7, 2017 p.m., Dkt. No. 266 at 74:21–75:13, 94:16–95:24; Sealed Trial Tr. Feb. 7, 2017, Dkt. No. 265 at 38:18–40:2.) The user base included users from December 2012 to January 2017. (Bratic Decl. ¶ 5; Dkt. No. 277 at 4–5; Dkt. No. 285 at 14; Trial Tr., Feb. 7, 2017 p.m., Dkt. No. 266 at 75:1–4.)

Although the jury did not expressly provide a royalty rate, the implied royalty rate may be calculated based on the total damages award and the user base. Plaintiffs calculate this implied rate by noting that the total damages award ($20 million) is about 76.12% of the total damages award they suggested to the jury ($26,275,887), which was based on a suggested rate of $0.0034. (Bratic Decl. ¶¶ 5–6; Dkt. No. 277 at 5.) Multiplying the rate Plaintiffs suggested to the jury ($0.0034) by this same percentage (76.12%) results in an implied rate of $0.002601 per Chrome user device per month. (Bratic Decl. ¶ 6.) The Court finds this undisputed calculation to be reasonable based on the evidence. Thus, the Court adopts $0.002601 as the implied royalty rate.

---

[2] Google produced its financial data using "monthly active user totals." (Bratic Decl. ¶ 5; Dkt. No. 277 at 5 n.1.)

### iii. Proper Royalty Rate

In this case, the Parties attempted to negotiate a rate amenable to both parties. However, such negotiations have failed. (Hr'g Tr. at 5:15–7:13; Dkt. No. 289 at 2; Decl. of Eric W. Benisek in Support of Plaintiffs' Motion for Ongoing Royalty, Dkt. No. 277-1 ¶ 2.) In fact, the Parties could not even agree as to whether their discussion of ongoing royalties was premature. (Dkt. No. 285 at 8; Dkt. No. 290 at 3.) At the hearing, the Parties indicated that further negotiations would result in an impasse. (Hr'g Tr. 6:18–21.) Having given the Parties an opportunity to negotiate an appropriate rate, and finding that it would be futile to order additional negotiation efforts, this Court now exercises its discretion to impose an ongoing royalty rate for post-verdict infringement.

As discussed in further detail below, Plaintiffs request a royalty rate that falls between $0.0052 and $0.0078 per Chrome user per month, which amounts to 2–3 times the implied jury rate. (Dkt. No. 277 at 17.) Defendant argues for a rate equal to the jury's implied rate.[3] For the reasons discussed below, the Court agrees with Google.

#### 1. Post-Verdict Hypothetical Negotiation

Plaintiffs first argue that a higher royalty rate is warranted due to changes in the Parties' bargaining power. (Dkt. No. 277 at 9.) Specifically, Plaintiffs argue that they would not willingly accept the implied royalty rate for post-verdict infringement, given the Parties' changed legal status, with Google now being an adjudicated infringer with weakened bargaining power. (Dkt.

---

[3] Although Defendant initially argued in its briefing that certain *Georgia-Pacific* factors actually favor a rate *lower* than the implied jury rate, during the ongoing royalty hearing, Defendant's counsel argued in favor of simply using the implied jury rate. (Hr'g Tr. at 29:11–15.) Moreover, as Plaintiffs note, when the jury set its royalty rate, it had already considered the evidence cited by Defendant in support of its arguments for a lower rate. (Dkt. No. 289 at 5.) For example, the jury heard evidence that Plaintiffs have never licensed the asserted patents. (Dkt. No. 289 at 5.) As such, without an explanation as to how such evidence should alter the post-verdict rate as compared to the pre-verdict rate, the Court need not reconsider the same evidence that has already been incorporated into the jury's verdict.

No. 277 at 10–11.) However, the Court is not persuaded, as the circumstances that would give Plaintiffs strengthened bargaining power (that the patents are infringed and not invalid) were already assumed and in place when the jury set its implied royalty rate.

It is clear that the jury assumed that the patents were valid and infringed when it analyzed the hypothetical negotiation that would have occurred just before infringement began. (Trial Tr. Feb. 7, 2017 p.m., Dkt. No. 266 at 78:25–79:4 (testimony of Plaintiff's damages expert); Feb. 9, 2017 a.m., Dkt. No. 270 at 49:4–9 (testimony of Defendant's damages expert); Feb. 10, 2017 a.m., Dkt. No. 272 at 49:13–16 (jury instructions, instructing the jury to assume validity and infringement).) Thus, the jury's implied royalty rate already encompasses the result that has now been formally reached through a verdict—that the patents are valid and infringed—and the Court need not alter the post-verdict hypothetical negotiation in light of these now confirmed assumptions. *See UroPep*, 2017 WL 3034655 at \*6–7; *EMC Corp*., 2017 WL 3434212, at \*3 ("When the court considers a hypothetical negotiation that occurs post-trial, that approximation and uncertainty are absent. The question is really whether removing such uncertainty materially affects the royalty rate calculation. The court does not believe it does.").

Plaintiffs next contend that the ongoing royalty rate should be enhanced because the patented invention covers the "flagship feature" of the Chrome web browser: a per-process sandbox that has been "fundamental" to the Chrome brand since 2008. (Dkt. No. 277 at 11 (citing Trial Tr. Feb. 8, 2017 a.m., Dkt. No. 267 at 71:23–73:20; 40:25–42:12; PTX-039; PTX-017).) Plaintiffs point to evidence presented at trial which, according to Plaintiffs, indicates that Google would rather pay a higher figure in this revised hypothetical negotiation than lose this "flagship feature" of Chrome. (Dkt. No. 277 at 11 (citing Trial Tr. Feb. 8, 2017 a.m., Dkt. No. 267 at 71:23–

12

73:20; 40:25–42:12; PTX-039; PTX-017).) Google responds, however, that Chrome has many features and that even with respect to the various security features of Chrome, the "auto-update" feature was the most important. (Dkt. No. 285 at 13 (citing Trial. Tr. Feb. 8, 2017 a.m., Dkt. No. 267 at 44:1–45:22).) Google also points to evidence that speed is the most important overall feature to users. (Dkt. No. 285 at 13 (citing Trial Tr. Feb. 8, 2017 a.m., Dkt. No. 267 at 13:6–17).) Based on this evidence, Google argues that the sandboxing feature is simply not as important as Plaintiffs make it out to be and that Plaintiffs' request for ongoing royalties at a rate 2–3 times the implied jury rate is therefore disproportionate to the relative value of the infringing feature. (Dkt. No. 285 at 13.)

The relative importance of the patented technology, both from Google's perspective and from its users' perspective, has already been considered by the jury and has been incorporated into the jury's implied rate. As such, without evidence that post-verdict circumstances will alter the importance of the patented feature, the Court finds no reason to reconsider this evidence. *See Internet Machines LLC v. Alienware Corp.*, No. 6:10-cv-23, 2013 WL 4056282, at *19 (E.D. Tex. June 19, 2013), aff'd sub nom. *Internet Machines LLC v. Cyclone Microsystems, Inc.*, 575 F. App'x 895 (Fed. Cir. 2014) ("[Plaintiff] points to numerous documents and testimony from trial in arguing that a number of the factors strongly suggest an increase is warranted in the royalty rate. But all of the evidence [the plaintiff] points out was previously before the jury and considered at the time the jury addressed damages. This evidence provides no insight into the parties' subsequent changed circumstances.").

Turning to the Parties' specific arguments under the *Georgia-Pacific* factors, Plaintiffs indicate that factors 1–7 have not changed. (Dkt. No. 277 at 11.) However, Plaintiffs argue that

13

factors 8–10, pertaining to profitability, commercial success, and benefits of the infringing product, favor a higher royalty. (Dkt. No. 277 at 11.) Plaintiffs first point to evidence that the number of regular users of Chrome increased 20% between 2015 and 2016. (Dkt. No. 277 at 11; Bratic Decl. ¶ 8 (citing Bratic Decl., Ex. A).) Google responds by noting that Plaintiffs did not provide any evidence to suggest that the 20% increase in Chrome users was caused by or attributable to the patented technology. (Bakewell Decl. ¶ 5.) In further support of this point, Google notes that the number of users for the *non-accused* version of Chrome increased by about 24.1% during the same period of time—a higher percentage increase than was experienced by the infringing version of Chrome. (Bakewell Decl. ¶ 6.) According to Google, this demonstrates that the increase in Chrome users was caused by something other than the patented technology. (Bakewell Decl. ¶ 6.) To some extent, the Court agrees. Although increased commercial success between the two hypothetical negotiation dates could theoretically favor a higher ongoing royalty rate, the evidence of causation is insufficient to warrant a higher royalty rate.

Plaintiffs also contend that Google's refusal to switch to what Google believes to be a suitable non-infringing alternative "in the face of significant legal exposure demonstrates the continued utility and advantage of the patented technology over old security methods." (Dkt. No. 277 at 11 (citing Trial Tr. Feb. 9, 2017 a.m., Dkt. No. 270 at 55:2–18; 78:12–79:24).) However, at least one district court has found that the ability for a defendant to switch to a non-infringing alternative actually weighs *against* a higher royalty rate because a defendant, post-verdict, is able to use an alternative rather than continue its infringing conduct. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 827 F. Supp. 2d 641, 658 (E.D. Va. 2011), aff'd in part, rev'd in part on other grounds, 694 F.3d 1312 (Fed. Cir. 2012) (noting that the defendant's ability to create a non-

infringing alternative lessens any increase in a plaintiff's bargaining power). Thus, the Court is not persuaded by Plaintiffs' argument on this point.

2. Willfulness

Irrespective of the *Georgia-Pacific* factors, Plaintiffs argue that the implied royalty rate should be enhanced because any continued infringement is inherently willful. Plaintiffs particularly point to testimony indicating that Google could switch to a non-infringing version of Chrome in a short amount of time and at little cost. (Dkt. No. 277 at 12 (citing Trial Tr., Feb. 9, 2017 a.m., Dkt. No. 270 at 55:2–18, 78:12–79:24).) This, Plaintiffs argue, shows that any continued infringement is necessarily willful. In response, Google argues that willfulness enhancement is *per se* improper, as willfulness is a means for enhancing *damages*, and damages "by definition cover[] only past harm." (Dkt. No. 285 at 8 (quoting *WhitServe*, 694 F.3d at 35 (stating this principle in the context of evaluating whether the jury awarded a paid-up license))).

Plaintiffs did not assert willful infringement at trial and instead dropped all allegations of willful infringement up through the jury verdict. (Dkt. No. 200 at 7.) In doing so, Plaintiffs stated that they were "retain[ing] the right to seek willful infringement in any post-trial proceedings such as seeking an ongoing royalty under *Paice LLC v. Toyota Motor Corp.*" (Dkt. No. 200 at 7.) As this Court noted during trial, willful infringement is essentially a claim for non-compensatory punitive damages. (Trial Tr. Feb. 6, 2017 p.m., Dkt. No. 263 at 78:10–79:21.) *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016) (noting that "[a]wards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior"). Meanwhile, the purpose of an ongoing royalty, an equitable form of

15

relief, is to help fully compensate the patent owner for infringement of its patent rights. As such, it is unclear whether enhancing an ongoing royalty based on future willfulness is appropriate. Regardless, considering the totality of the circumstances developed throughout the trial, the Court is not persuaded that an enhancement based on willfulness would be appropriate in this case.

Both Parties spend much of their briefing analyzing the various *Read* factors, which are used by courts, even after *Halo*, when determining whether to enhance damages after a jury finding of willful infringement. *See Dominion Res. Inc. v. Alstom Grid, Inc.*, No. CV 15-224, 2016 WL 5674713, at *21 (E.D. Pa. Oct. 3, 2016) (collecting cases where courts have used the *Read* factors to guide the discretionary analysis post-*Halo*). The *Read* factors include: "(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of defendant's misconduct; (7) any remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct." *Affinity Labs of Texas, LLC v. BMW N. Am.*, LLC, 783 F. Supp. 2d 891, 902 (E.D. Tex. 2011) (citing *Read*, 970 F.2d at 827).

The Court does not find application of the *Read* factors necessary in this case. Although the Court does not necessarily agree with Google's argument that enhancing the ongoing royalty rate based on willfulness is *per se* improper, the Court recognizes that the Federal Circuit has discounted the relevance of willfulness in at least some circumstances. *See Amado*, 517 F.3d at 1356–62.

As previously mentioned, in *Amado*, the district court issued a permanent injunction to prevent future infringement of the patents, but then *stayed* implementation of that injunction until seven days after the resolution of any appeal. *Amado*, 517 F.3d at 1356. As a condition of the stay of the injunction, the district court also required the defendant to make escrow deposits of a certain amount for each infringing product sold during the stay period. *Id.* After the first appeal on the merits concluded, the Circuit remanded the case for the district court to determine the proper royalty rate for sales that occurred during the period of time that the permanent injunction was stayed. *Amado*, 517 F.3d at 1356. The district court determined that the plaintiff was entitled to a royalty rate that was three times the reasonable royalty rate implied by the jury verdict, trebling the rate using willful infringement as a guideline. *Id.* at 1361–62.[4] On appeal of the royalty rate set by the district court, the Federal Circuit stated that "willfulness, as such, is not the inquiry when the infringement is permitted by a court-ordered stay." *Amado*, 517 F.3d at 1362.

The posture of this case is far different from the unique scenario in *Amado*. However, it is difficult to see how the underlying logic of *Amado* does not apply here. In *Amado*, the Court held that willfulness was not the relevant inquiry when setting the royalty rate for post-verdict sales, even where the defendant knew that a permanent injunction of those sales would become effective in the future. In short, although the defendant in *Amado* was authorized to make infringing sales during the stay of the injunction, the defendant knew it would ultimately have to cease its infringing activity. Here, all Parties are aware that no permanent injunction will issue in this case because Plaintiffs have elected not to seek a permanent injunction. Thus, future infringement will

---

[4] On remand, the district court in *Amado* also determined that the permanent injunction should be dissolved prospectively, given the Supreme Court's intervening decision in *eBay*. However, this aspect of *Amado* does not impact the analysis in this case.

be authorized, even though Google will be required to pay a royalty for any such infringement. When comparing these two post-verdict scenarios, it appears to this Court that willfulness would be more relevant to the situation in *Amado* than it would be to the situation here, where any future infringement is authorized indefinitely. However, since the Circuit has rejected consideration of willfulness in the *Amado* context, this Court finds it appropriate to reject consideration of willfulness in this case as well.[5] *See EMC Corp.*, 2017 WL 3434212, at *5 ("If willfulness was not the proper inquiry in *Amado* where the district court awarded an injunction—despite staying it pending appeal—it seems equally improper here where the court already decided that the equities did not weigh in favor of granting [the plaintiff] an injunction."). Moreover, as other courts have noted, Plaintiffs receive a benefit from Google's continued infringement—an ongoing royalty for future infringing uses. *Id.*; *UroPep*, 2017 WL 3034655, at *9. Accordingly, this Court declines to enhance the ongoing royalty rate in this case based on a theory of willfulness.

Having considered the Parties' arguments, the Court agrees with Google that Plaintiffs have not presented sufficient evidence of changed circumstances such as to warrant enhancement of the implied jury rate in this case. In sum, Plaintiffs bear the burden of demonstrating that a heightened royalty is appropriate in this case. The Court is not persuaded that economic and commercial circumstances have changed materially since the date of the hypothetical negotiation considered by the jury. Accordingly, having considered anew the *Georgia Pacific* factors, and having rejected any enhancement based on willfulness, the Court finds no reason to depart from the jury's implied royalty rate in this case.

---

[5] In this Court's view, Plaintiffs' arguments regarding reducing Google's marginal profit from its infringing activity as a means of deterring patent infringement remain inextricably intertwined with a willfulness analysis. Accordingly, the Court does not consider such arguments here.

18

### d. Reporting Requirement

For purposes of administering the ongoing royalty going forward, the Court finds it appropriate to establish a reporting requirement. Plaintiffs suggest a reporting requirement which mirrors Google's method of reporting during discovery. Specifically, Plaintiffs suggest that by the 5th of each month, Google should produce a report of 7-day active users of all infringing versions of Chrome, as of the 1st day of that month. (Dkt. No. 277 at 18.) Plaintiffs further suggest that Google should be required to pay the ongoing royalty no later than the 15th of each month. (Dkt. No. 277 at 18.) Google has not disputed this suggestion, nor has it provided a competing proposal. Accordingly, the Court finds Plaintiffs' approach to be reasonable and adopts it for this case.

## III. SUPPLEMENTAL DAMAGES

"District courts have discretion to award damages for periods of infringement not considered by the jury." *Whitserve*, 694 F.3d at 38 (citing *Fresenius I*, 582 F.3d at 1303). Here the jury, during trial, was presented with user data through January 31, 2017. (Dkt. No. 285 at 4–5.) As such, the patentee has not yet been compensated for infringing uses from February 1, 2017, through the entry of judgment. As discussed above, however, the Parties have agreed to apply the ongoing royalty rate determined by the Court to this supplemental damages period, thus eliminating the need for an additional motion. (Hr'g Tr. at 45:20–47:12.)

## IV. CONCLUSION

Having determined that the ongoing royalty rate should be consistent with the jury's implied royalty rate in this case, the Court finds that Plaintiffs' Motion for Ongoing Royalty (Dkt. No. 277) should be **GRANTED AS MODIFIED**. The Court hereby sets the ongoing royalty rate for the accused technology at $0.002601 per Chrome user per month. The Court further holds that

such rate shall apply beginning February 1, 2017, being the day after the last date for which the jury considered damages. The Court will incorporate the above determined ongoing royalty rate into the Final Judgment it will subsequently enter in this case.

**So ORDERED and SIGNED this 12th day of September, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE