IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

ALFONSO CIOFFI,  MELANIE
ROZMAN,  MEGAN ROZMAN,
MORGAN ROZMAN,

  *Plaintiffs*,

v.

GOOGLE LLC,

  *Defendant*.

§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO.  2:13-CV-00103-JRG

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Google LLC's ("Google") Motion for Post-Trial Relief on Invalidity under 35 U.S.C. §§ 102, 103, and 251 (the "Motion").  (Dkt. No. 292).  The Court recently resolved the Motion with respect to the issues relating to 35 U.S.C. § 251.  (Dkt. Nos. 340 and 341).  Plaintiffs Alfonso Cioffi, Melanie Rozman, Megan Rozman, and Morgan Rozman (collectively, "Plaintiffs") recently notified the Court that aspects of the Motion relating to 35 U.S.C. §§ 102 and 103 remain outstanding.  (Dkt. No. 343).  The Court had previously carried those aspects of the Motion (Dkt. No. 319 at 11) and now issues this Order resolving those issues. For the reasons stated herein, the Motion is **DENIED** as to the carried issues.

## I.  LEGAL STANDARD

### A.  Judgement as a Matter of Law

"Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'"  *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)).  The non-moving party must

identify "substantial evidence" to support its positions.  *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D. Tex. 2007).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004).

"The Fifth Circuit views all evidence in a light most favorable to the verdict and will reverse a jury's verdict only if the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010)).  A court must "resolve all conflicting evidence in favor of [the verdict] and refrain from weighing the evidence or making credibility determinations." *Gomez v. St. Jude Med. Daig. Div. Inc.*, 442 F.3d 919, 937–38 (5th Cir. 2006).

### B.    New Trial

A new trial may be granted on all or part of the issues on which there has been a trial by jury for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).  Notwithstanding the broad sweep of Rule 59, "courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-00744, 2017 WL 3704760, at *2 (E.D. Tex. Aug. 28, 2017); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 643 (E.D. Tex. 2017).  "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003) ("A new trial is warranted if the evidence is against the great, and

2

not merely the greater, weight of the evidence."). Furthermore "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . . the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

## II.    DISCUSSION

Google's Motion puts forth various grounds for finding Reissued U.S. Patent No. 43,500 (the "'500 Patent), Reissued U.S. Patent No. 43,528 (the "'528 Patent"), and Reissued U.S. Patent No. 43,529 (the "'529 Patent") (collectively, the "Patents-in-Suit" or individually, an "Asserted Patent") are invalid under §§ 102 and 103. As explained below, the Court finds the jury's verdict is supported by substantial evidence in the record. Such a finding requires denial of the carried issues in Google's Motion.

### A.    GreenBorder System

Google first argues that the GreenBorder System is prior art under § 102(a). (Dkt. No. 292 at 21). Google argues that the priority date of the Patents-in-Suit is August 7, 2004, and that the GreenBorder System is prior art because it was "known or used by others in this country before the priority date." (*Id.*). For support, Google points to the testimony of Mr. Mark Larson—an engineer at GreenBorder from 2002 to 2007. (*Id.*). Google argues that Mr. Larson testified that "GreenBorder publicly announced and demonstrated the GreenBorder System at an industry conference in November 2003 and that the system was sold to customers starting in the first quarter of 2004." (*Id.*) (citing Dkt. No. 267 at 118:19–119:9, 119:20–120:5). Google also argues that Mr. Larson authenticated and confirmed dates of several pieces of documentation authored by him that predate August 2004 and describe the GreenBorder System. (*Id.*) (citing DTX-1097; DTX-1092; DTX-1105; Dkt. No. 267 at 126:18–127:23, 132:1–20, 138:8–139:2). Google argues that this

documentation and corroboration about a prior art system is sufficient to show public use or knowledge of that system under § 102.  (*Id.*).

Plaintiffs respond that "Google failed to present evidence that [the GreenBorder System] qualified as prior art beyond the self-serving statements of its own witnesses."  (Dkt. No. 295 at 23).  Plaintiffs argue that there is no evidence in the trial record "to corroborate that [the GreenBorder System] was publicly 'known or used by others' before the priority date of the Asserted Claims."  (*Id.*).  Plaintiffs argue that, beyond Mr. Larson's testimony that the GreenBorder System was publicly displayed and sold before August 2004, Google presented no evidence such as a written agreement with GreenBorder customers or customer contacts for the alleged sales.  (*Id.*).  Plaintiffs argue that Mr. Larson "conceded there was no documentary evidence to corroborate his testimony about the trade show despite admitting that Google should have had such documents if they existed."  (*Id.*) (citing Dkt. No. 268 at 38:16–39:19).  Plaintiffs contend that the documents Google argues corroborate Mr. Larson's testimony are labeled "drafts" and were confidential.  (*Id.*).  Plaintiffs argue that such suggests that the GreenBorder System was not operational at the time the documents were drafted.  (*Id.*).  Plaintiffs argue that the jury was free to reject Mr. Larson's uncorroborated testimony.  (*Id.* at 24).

Although the verdict form submitted to the jury did not contain a specific question as to whether the GreenBorder System was prior art[1] (Dkt. No. 259 at 3), the Court is persuaded that such a finding would be supported by substantial evidence.  Google does not dispute that the documents presented at trial for the GreenBorder System were drafts and/or marked confidential. (Dkt. No. 297 at 9).  It was appropriate for the jury to weigh these documents and Mr. Larson's testimony to determine whether the GreenBorder System was known or used by others before the

---

[1] The Court did instruct the jury on what constitutes prior art.  (Dkt. No. 272 at 36:2–22).

priority date.  The jury was free to conclude that Mr. Larson's testimony and the draft and confidential documents did not rise to the level of clear and convincing evidence required to invalidate the Asserted Patents.  *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1311 (Fed. Cir. 2020) ("The jury was entitled to credit [plaintiff's expert's] testimony over [defendant's expert's], and, drawing all inferences in favor of the jury verdict and accepting the jury's credibility determinations, the jury's verdict . . . is supported by substantial evidence.").  Accordingly, Google's Motion is **DENIED** is this regard.

### B.      '528 Patent, Claim 67: Anticipation

Google argues that it presented clear and convincing evidence that the '528 Patent is anticipated by both U.S. Patent No. 7,694,328 ("Joshi") and the GreenBorder System.  (Dkt. No. 292 at 20–21).  The parties focus their arguments on the fourth element of Claim 64.[2]

> [P]ass data from the first web browser process to the second web browser process, wherein the at least one system file residing on the first memory space is protected from corruption by a malware process downloaded from the network and executing as part of the second web browser process.

('528 Patent at Claim 64).  As explained below, the Court is persuaded that the jury's finding is supported by substantial evidence.

Google argues that it established by clear and convincing evidence that Joshi and the GreenBorder System disclose the fourth limitation of Claim 64.  Google argues that its expert, Dr. Arbaugh, explained how Joshi describes Internet Explorer's Protected and Isolated Contexts, which communicate website data between each other.  (Dkt. No. 292 at 23).  Google also argues that Dr. Arbaugh explained how files in the Protected Context are protected from malware as required by the fourth element of Claim 64.  (*Id.*) (citing DTX-1354 at Fig. 1, 3:12-20, 22:60-67, 31:25-28, 37:34-41; Dkt. No. 268 at 72:6-74:6, 74:20-75:13).  Google contends that Dr. Arbaugh

---

[2] Asserted Claim 67 depends from Claim 64.

also explained that the GreenBorder System further discloses this element based on documents that show that a "system file" cannot be opened in the "GreenBorder Environment" (i.e., the Isolated Context).  (*Id.*) (citing DTX-1097 at 165; Dkt. No. 268 at 75:14-76:10).  Google also points out that Plaintiffs' expert, Dr. Dunsmore, argued that Joshi and the GreenBorder System cannot disclose "pass[ing] data from the first web browser process to the second web browser process" because the "data" must be "website data" and Dr. Arbaugh had only testified about passing a "URL."  (*Id.* at 24).  Google argues Dr. Dunsmore ignored Joshi's disclosure of the IMonkier and IStream interfaces that "pass the content" of a website and Joshi's "drag and drop" feature, which allows the user to drag website content from a web browser window in Protected Context to one in the Isolated Context.  (*Id.*).

Plaintiffs respond that Dr. Arbaugh provided only a single example of Joshi "pass[ing] data" and it was that of a "URL," not website data.  (Dkt. No. 295 at 24).  Plaintiffs argue that Dr. Dunsmore offered testimony that a URL is not website data and that Dr. Arbaugh did not provide any other examples of the disclosure of the passing of website data in Joshi.  (*Id.*) (citing Dkt. No. 270 at 119:7–23, 120:7–23).  Plaintiffs also argue that Dr. Dunsmore testified that the passing of website data between Internet Explorer programs in different contexts would defeat the security mechanisms disclosed in Joshi and the GreenBorder System.  (*Id.*) (citing Dkt. No. 270 at 120:19–121:6).  Plaintiffs also respond that "Google failed to establish that Joshi's 'drag and drop' feature meets the website data" limitation because Dr. Arbaugh never opined that the "drag and drop" feature constitutes "pass[ing] data."  In particular, Dr. Dunsmore testified that the "drag and drop" feature could be a display feature rather than passing data between different contexts.  (*Id.* at 24–25).

The Court finds the jury's verdict of no invalidity is supported by substantial evidence. As described above, the experts put forth lengthy testimony and opinions on the Joshi reference and the GreenBorder System. The jury was free to weigh that testimony and the evidence presented to find that Google did not meet its clear and convincing burden to show that the Joshi reference and GreenBorder System anticipate Claim 67. *Packet Intelligence*, 956 F.3d at 1311. Accordingly, Google's Motion is **DENIED** in this regard.

### C.    Obviousness

Google argues that it showed by clear and convincing evidence that Joshi in combination with U.S. Pub. 2005/0188173 ("Hasbun") renders obvious Claim 49 of the '529 Patent and Claim 5 of the '528 Patent. Google also argues that it showed by clear and convincing evidence that Joshi in combination with U.S. Pub. 2002/0002673 ("Narin") renders obvious Claim 43 of the '500 Patent. The parties appear to dispute only the following limitations and issues:

- **"Initializing"** ('529 Patent, Claim 36[3] and '500 Patent, Claim 41[4])

- **"Secure web browser process"** ('529 Patent, Claim 36)

- **"Intelligent Cellular Telephone Capability" ("ICTC")** ('500 Patent, Claim 41)

- **"Combining and Displaying"** ('528 Patent, Claim 5)

- **"Protected Mode" and Motivation to Combine Joshi and Hasbun** ('528 Patent, Claim 5 and '529 Claim 49)

- **Secondary Considerations**

### 1.    "Initializing"

Google contends that Joshi in combination with Hasbun renders this limitation in Claim 36 of the '529 Patent obvious and Joshi in combination with Narin renders this limitation in Claim 41

---

[3] Asserted Claim 49 depends from Claim 36.
[4] Asserted Claim 43 depends from Claim 42, which depends from Claim 41.

of the '500 Patent obvious.  (Dkt. No. 292 at 25–27).  Google argues that Joshi describes how Internet Explorer can run in Protected Context and Isolated Context and that the Internet Explorer Protected Context can launch an instance of the Isolated Context using the Internet Explorer Browser Helper Object ("BHO").  (*Id.* at 25–26).  Google argues that Plaintiffs' expert, Dr. Dunsmore, did not dispute this fact, but instead noted that the BHO is a "separate program" from Internet Explorer and therefore does not teach this claim limitation.  (*Id.* at 26) (citing Dkt. No. 270 at 124:1–20).  Google contends that Dr. Dunsmore then concluded that because it is a separate program, the BHO performs the initializing taught by the claims, not the browser itself (in this case Internet Explorer in Protected Context), which is required by the claims.  (*Id.* at 26).  Google responds that Dr. Dunsmore is incorrect.  The BHO, Google argues, is not a separate program because it is loaded by Internet explorer at start up.  (*Id.* at 26) (citing DTX-1354 at 33:35–40; Dkt. No. 271 at 76:19–21).

Plaintiffs respond that the evidence at trial established that neither Joshi in combination with Narin nor Hasbun discloses the "initializ[ing]" limitations.  (Dkt. No. 295 at 26).  Plaintiffs argue that Dr. Dunsmore testified that the BHO is a separate component from the Internet Explorer program in Joshi and that Joshi specifically states that the BHO, not the first Internet Explorer program, initializes the second Internet Explorer program.  (*Id.*) (citing Dkt. No. 270 at 123:15–124:20).  Plaintiffs argue that there is conflicting expert testimony, but substantial evidence supports the jury's finding that the BHO and Internet Explorer program were separate and therefore did not satisfy the claim.  (*Id.*).

The Court agrees with Plaintiffs.  Again, both experts presented conflicting testimony on whether the BHO was separate or part of the Internet Explorer program.  As reflected in their unanimous verdict, the jury appropriately weighed the conflicting testimony and decided that Joshi

did not disclose the claimed limitations.  *Packet Intelligence*, 956 F.3d at 1311.  Accordingly, Google's Motion is **DENIED** in this regard.

### 2. "Secure web browser process"

Google argues that it showed, by clear and convincing evidence, that the "secure web browser process" limitation claimed in Claim 36 was obvious in light of Joshi in combination with Hasbun.  Google argues that its expert explained that Joshi describes how Internet Explorer (i.e., the "secure web browser process") can run in multiple instances of the Protected Context (i.e., the "first web browser process") and the Isolated Context (i.e., the "second web browser process"). (Dkt. No. 292 at 25) (citing DTX-1354 at 32:16–23; Dkt. No. 268 at 82:9–19).  Google argues that Dr. Dunsmore's "attempt to draw a distinction between 'web browser processes' and 'complete web browsers' finds no support in the claim language or the specification."  (*Id.*).

Plaintiffs respond that Google's expert was found to lack credibility due to his inability to define what constituted an "instance" of Internet Explorer.  Also, Mr. Larson contradicted Dr. Arbaugh's testimony when Mr. Larson testified that the whole Internet Explorer program in the isolated context was sandboxed.  (Dkt. No. 295 at 27) (citing Dkt. No. 268 at 120:1–11, 122:9–14).

The Court finds that substantial evidence supports the jury's finding that Google did not establish its obviousness theory by clear and convincing evidence.  Again, both sides presented competing expert testimony and therefore substantial evidence supports a finding in favor of Plaintiffs on this issue.  The jury appropriately heard all the evidence and the competing testimony. By their verdict, the jury decided who they considered most credible.  *Packet Intelligence*, 956 F.3d at 1311.  Accordingly, Google's Motion is **DENIED** in this regard.

###     3.     ICTC

Google argues that Joshi in combination with Narin renders obvious a portable device with "intelligent cellular telephone capability" as recited in Claim 41.  (Dkt. No. 292 at 28).  Google points to testimony by its expert, Dr. Arbaugh, that Joshi describes a software system that can be used by "mobile users" with devices that connect to "wireless networks," and Narin discloses devices with "RF" capability.  (*Id.*).  Google argues that Dr. Arbaugh testified that "RF" stands for radio frequency and a cellular network uses radio frequency.  (*Id.*) (citing Dkt. No. 268 at 99:13–23).  Google also notes that the combination would have been obvious because both references relate to "the idea of trying to prevent malware from affecting another process."  (*Id.*) (citing Dkt. No. 268 at 100:11–20).

Plaintiffs respond that "Dr. Arbaugh testified that Joshi discloses wireless networks which *could* be cellular but admitted that Joshi 'doesn't speak to the cellular directly.'"  (Dkt. No. 295 at 27) (citing Dkt. No. 268 at 98:4–7).  Plaintiffs contend that neither Narin nor Joshi disclose a "cellular telephone" implementation.  (*Id.*).  Plaintiffs also argue that Dr. Dunsmore testified that "a POSITA would not be motivated to combine Joshi and Narin because Narin teaches away from Joshi because it specifically denies web access to the secure process."  (*Id.*) (citing Dkt. No. 270 at 129:5–130:25, 131:1–132:2).  Plaintiffs argue that Dr. Arbaugh conceded that "Narin does not have a first web browser required by the Court's construction of intelligent cellular telephone capability, which is probative that a POSITA would not be motivated to combine the two references."  (*Id.*).

The Court finds that the jury's verdict is supported by substantial evidence.  Here, both experts provided conflicting testimony, particularly on the motivations to combine the references. There is substantial evidence to support the jury's finding that Google did not establish that these references rendered Claim 43 obvious.  The jury appropriately heard all the evidence and the

competing testimony and, by their verdict, decided who they found more credible.   *Packet Intelligence*, 956 F.3d at 1311.  Accordingly, Google's Motion is **DENIED** in this regard.

### 4. "Combining and Displaying"

Google argues that Dr. Arbaugh explained that Joshi describes "rendering web pages with content from multiple security context in one user interface."  (Dkt. No. 292 at 29) (citing DTX-1354 at 34:14-20; Dkt. No. 268 at 105:22–106:4).   Google notes that Plaintiffs' expert, Dr. Dunsmore, disputed whether Joshi disclosed this element.  (*Id.*).  Google argues that Dr. Dunsmore was offering a narrowed claim construction that required data "from the 'two web browser processes' 'be combined into one set of data to be displayed.'"  (*Id.*).  Google argues that Dr. Dunsmore's understanding is incorrect and Plaintiffs never sought such a claim construction from the Court.  (*Id.*).

Plaintiffs respond that the plain language of the claim requires more than simply displaying data, and Dr. Arbaugh "provided scant evidence to establish that Joshi discloses a video processor adapted to combine data from the first and second logical processes and transmit the combined data to the display."  (Dkt. No. 295 at 28).  Plaintiffs argue that "Dr. Dunsmore described how Joshi does not combine the data for display and the jury accepted his testimony over Dr. Arbaugh."  (*Id.*) (citing Dkt. No. 270 at 121:19–122:8).

The Court finds there is substantial evidence to support the jury's verdict that Google did not establish that Joshi does not disclose the claim limitations at issue.  Here, again, the experts offered competing testimony.  It is the role of the jury to assess that testimony and the evidence, which they did as reflected by their verdict.  *Packet Intelligence*, 956 F.3d at 1311.  Accordingly, Google's Motion is **DENIED** in this regard.

     5.      **"Protected Mode" and Motivation to Combine Joshi and Hasbun**

Google addresses the "Protected Mode" limitation and the "multi-core processor" limitations together. (Dkt. No. 292 at 29–30; Dkt. No. 297 at 10). Like the other limitations, Google argues that its expert, Dr. Arbaugh, explained how Joshi in combination with Hasbun discloses these limitations. (Dkt. No. 292 at 30). Plaintiffs counter with how their expert provided contradicting testimony and identified deficiencies with Dr. Arbaugh's opinion. (Dkt. No. 295 at 28–29). Like the previous claim limitations, the Court finds that the jury's verdict is supported by substantial evidence. It is the role of the jury to resolve contradicting expert opinions and testimony, particularly as it relates to motivations to combine. *Packet Intelligence*, 956 F.3d at 1311. Accordingly, Google's Motion is **DENIED** in this regard.

     6.      **Secondary Considerations**

Plaintiffs argue that "Google ignores the overwhelming evidence of secondary considerations that supports nonobviousness of the asserted claims." (Dkt. No. 295 at 30). Plaintiffs argue that Dr. Arbaugh simply testified "that he could find no evidence of secondary considerations to support non-obviousness and failed to address Prof. Dunsmore's opinions." (*Id.*) (citing Dkt. No. 268 at 108:16–110:9). Plaintiffs argue that Dr. Dunsmore "testified at length that real world evidence indicated that a POSITA would not find the claims obvious," including Google Chrome's commercial success, Google's own documents that the patented web browser architecture satisfied a long felt, but unmet need, and Google's efforts to patent per-process sandboxing after the aster claims' priority date. (*Id.*).

Google counters, albeit briefly, in its reply that "Dr. Dunsmore admitted that he did not understand the 'nexus' requirement for secondary considerations and did 'no analysis to determine if users use Chrome because of the inventions claimed in these patents.'" (Dkt. No. 297 at 10).

Although the verdict form submitted to the jury did not contain a specific question about secondary considerations of nonobviousness[5] (Dkt. No. 259 at 3), the Court is persuaded that such a finding would be supported by substantial evidence.  Plaintiffs indisputably presented evidence relevant to secondary considerations at trial and the jury was free to consider that evidence.  *Packet Intelligence*, 956 F.3d at 1311.  Accordingly, Google's Motion is **DENIED** is this regard.

## III.    CONCLUSION

For the reasons stated herein, Google's Motion is **DENIED** with respect to its §§ 102 and 103 arguments.

**So ORDERED and SIGNED this 3rd day of December, 2021.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[5] The jury was instructed on secondary considerations of nonobviousness.  (Dkt. No. 272 at 42:23–44:5).